**Robert HAMILTON, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**Henry KLEIN, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**Walter F. RIGGIN, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**Earl W. TAVENNER, Appellant,**

v.

**UNITED STATES of America, Appellee.**

Nos. 21889, 21892, 21894, 21895.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 26, 1969.

Decided July 31, 1970.

Petition for Rehearing denied Aug. 28, 1970.

**528**

several Washington policemen, was allegedly responsible for several hundred burglaries involving more than two million dollars in stolen property. The four appellants here were each charged with [1] and convicted of single counts of conspiracy, housebreaking and grand larceny.[2] Appellants urge numerous grounds for reversal. For the sake of convenience, we consider in Part I appellants' assignments of error which affect all of their convictions, and in Part II those arguments which reach solely to the conspiracy count.

Mr. Ira M. Lowe, Washington, D. C. (appointed by this court), for appellant in No. 21,889.

Mr. Bernard Margolius, Washington, D. C., for appellant in No. 21,892.

Mr. H. Clifford Allder, Washington, D. C., for appellants in Nos. 21,894 and 21,895.

Mr. Harold J. Sullivan, Asst. U. S. Atty., with whom Mr. David G. Bress, U. S. Atty. at the time the brief was filed, was on the brief, for appellee. Messrs. Thomas A. Flannery, U. S. Atty., and John A. Terry, Asst. U. S. Atty., also entered appearances for appellee.

Before DANAHER, Senior Circuit Judge, and WRIGHT and MacKINNON, Circuit Judges.

J. SKELLY WRIGHT, Circuit Judge.

These cases involve four of 16 individuals charged with being members of a highly organized burglary ring in the greater Washington, D.C. area. During a 15-month period in 1964 and 1965, this organization, which included

**I**

Initially, appellants urge they were prejudiced by the trial court's refusal to order a psychiatric examination of the Government's principal witness, Robert Earl Barnes. The trial court's opinion denying such an order emphasized that appellants had not provided any substantial factual predicate for their request and that the results of a previous psychiatric evaluation of Barnes—which found no psychosis—would be available to the defense. United States v. Klein, D.D.C., 271 F.Supp. 506 (1967). On the basis of the trial court's opinion, we find no reason to disturb its ruling.

Appellants next challenge the trial court's failure to provide them with some 250 pages of Barnes' grand jury testimony, relying on Dennis v. United States, 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966). We find no merit in appellants' position. The portions of Barnes' grand jury testimony that were not turned over to the defense constituted a small fraction of Barnes' total testimony before the grand jury. The trial court granted discovery to appellants of the vast majority of Barnes' testimony.[3]

---

1. Appellant Hamilton was also charged with interstate transportation of stolen property, but the jury acquitted him on this charge.

2. Appellants Klein, Hamilton and Riggin were sentenced to concurrent prison terms of 16 months to four years on each count. Appellant Tavenner was sentenced to one to three years in prison on each count; his sentences are also to run concurrently.

3. The Government provided the transcript to the defense prior to Barnes' direct examination.

In *Dennis*, the Supreme Court explicitly stated:

> "The trial judge's function in this respect is * * * to supervise the process: for example, to cause the elimination of extraneous matter and to rule upon applications by the Government for protective orders in unusual situations * * *."

384 U.S. at 875, 86 S.Ct. at 1871. The trial court specifically found in the present case that the materials denied the defense were "information unrelated to the instant charges, matters unrelated to the present trial and currently under investigation, and matters pertaining to individuals identified in the testimony who are entitled to protection from adverse publicity attendant on having their names raised in connection with the instant case." Moreover, the trial judge itemized the portions denied the defense, and this material was transmitted to this court. We have carefully examined it and, with one exception,[4] find the trial court s description entirely accurate. Consequently, appellants were properly denied access to it.

■ Appellants also challenge the legality of a police search of Klein's office and the seizure of his business records, pursuant to a search warrant. The trial court conducted a suppression hearing on appellants' motions and held against appellants. We have reviewed the lengthy affidavit which was the basis on which the search warrant was issued and find that it substantially exceeds the requirements set out in Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12

L.Ed.2d 723 (1964), and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). Moreover, the affidavit sets out in some detail the extensive conspiracy alleged, the specific premises to be searched, and the business records used in furtherance of the conspiracy which were to be seized. While the large amount of written business records seized undoubtedly lies close to the boundary of seizures permitted by the Fourth Amendment, we think the police officers' affidavit supplied the substantial justification and specificity necessary for the search conducted.

■ Appellants' next objection is to the introduction into evidence of out-of-court statements made by appellant Klein.[5] The Government obtained these statements by electronically monitoring Klein's conversations with an informer who was cooperating with the Government. Appellants, relying on United States v. White, 7 Cir., 405 F.2d 838, cert. granted, 394 U.S. 957, 89 S.Ct. 1305, 22 L.Ed.2d 559 (1969), argue that the Government "seized" these conversations in violation of the Fourth Amendment and they were, therefore, improperly admitted in evidence. The Seventh Circuit in *White* applied the principle announced in Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), retroactively. Since *White* the Supreme Court, in Desist v. United States, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969), has limited the *Katz* ruling to prospective application. So neither *Katz* nor *White* can help appellants here. We are, of course, aware

4. Eight pages of Barnes' testimony which were denied to the defense involved a burglary charged as an overt act of the conspiracy. These pages should have been made available to the defense. However, Barnes' account to the grand jury regarding this burglary was entirely consistent with his testimony about it at trial, and we, therefore, believe that this error was harmless and did not affect substantial rights of appellants. Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946); Rule 52(a), Fed.R.Crim.P. The relevant

pages from the grand jury transcript Volume 28, pages 1465–1470, and Volume 5, pages 205–207, should nevertheless be made available to defense counsel on request.

5. The Government introduced tape recordings of four conversations and had police officers testify to the substance of a fifth conversation. The informer did not testify. These out-of-court statements were admitted only against appellant Klein.

that the Supreme Court in *White* may reconsider its prospective only ruling in *Desist*. We need not wait on *White*, however, because appellants' position on this issue can be protected through an application for a writ of *certiorari*.[6]

■ Finally, appellants challenge the trial court's action in permitting the jury during its deliberations to hear the Klein tape recordings, while denying the jury's request to see Barnes' grand jury testimony. The tape recordings were in evidence, and it is within the discretion of the trial court to send exhibits which have been admitted in evidence to the jury. Robinson v. United States, 93 U.S.App.D.C. 347, 210 F.2d 29 (1954). It is similarly apparent that the trial court's refusal to send the jury Barnes' grand jury testimony which was not in evidence was required by decisions of this court. Sawyer v. United States, 112 U.S.App.D.C. 381, 383–384, 303 F.2d 392, 394–395 (1962).

## II

We now turn to appellants' challenges which are limited to the validity of their convictions of conspiracy.

■ Appellants were convicted of conspiring together in one general conspiracy to violate the theft and housebreaking statutes as charged in the indictment. Appellants urge, however, that the evidence adduced by the Government, if believed, established many separate conspiracies and, citing Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), argue that their convictions on the conspiracy count should be reversed. The evidence

adduced by the Government in this case was substantial and exhaustive in a trial which stretched over a period of six weeks. It tended to show that Klein set up burglaries for Barnes for a percentage of the take and also fenced much of the stolen property. Riggin, Tavenner and Hamilton assisted Barnes on various burglaries and also set up other burglaries. The Government's evidence tended to show that appellants knew of each other's activities and cooperated in, planned or executed numerous burglaries together. We have carefully reviewed the record and find that the Government made out a *prima facie* case that appellants conspired in the single conspiracy as charged.[7]

■ Appellants' second claim relating to the validity of their conspiracy convictions concerns their requests for separate trials.[8] The trial court denied their motions for severance, and appellants argue that this action was error. Appellants Hamilton, Tavenner and Riggin focus their complaint in this regard on the Government's introduction into evidence of the conversations between appellant Klein and an informer referred to above. These out-of-court statements were admissible, if at all, *see* page 529 *supra*, only against Klein as admissions, but they were inadmissible against the other three appellants since the conversations occurred after the termination of the conspiracy. The contents of these conversations, to the extent they incriminate these three appellants at all, relate solely to the existence of a conspiracy. In our view, therefore, their challenge on this ground reaches only their conspiracy convictions.

6. Also as here, the facts in *White* present this additional issue for determination: whether consensual eavesdropping evidence is admissible where the consenting party is not called by either side.

7. We also take note that the trial judge charged the jury in clear language on this point:

"If you find from the evidence that Robert Earl Barnes engaged in separate conspiracies with some of the oth-

er individual defendants but did not engage in a single conspiracy alleged in the indictment, then you must find the defendants not guilty on the first count of the indictment."

8. Appellant Klein also urges that it was error to deny his motion for a separate trial; his argument reaches the validity of all of his convictions. We find his claim, however, to be entirely without merit. *See* Rule 8(b), Fed.R.Crim.P.

■ Turning to the merits of their argument, we agree that this case comes within the rule announced by the Supreme Court in Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), and made retroactive by Roberts v. Russell, 392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100 (1968).[9] Thus the trial court's instructions to the jury that Klein's out-of-court statements were evidence only against Klein were not adequate to protect his three co-defendants if they were prejudiced by these out-of-court statements.

■ However, applying the rule of Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), made applicable to *Bruton* by Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969), we find beyond a reasonable doubt that, because of the overwhelming weight of the evidence, the admission of Klein's out-of-court statements did not affect the jury's verdict as to his co-defendants. Actually the issue is not of transcendent importance in this case since the sentences imposed on the conspiracy count all run concurrently with those imposed for substantive offenses.[10]

Other issues have been raised, but none which merit further discussion. Accordingly, the judgments of conviction of all appellants are

Affirmed.

DANAHER, Senior Circuit Judge (concurring):

I concur in Judge Wright's opinion. I submit my further comments only that, taken together, our respective texts may be the more explicit respecting electronic surveillance of conversations between the appellant Klein and James Skeens and his wife, Marsha.

One can only vaguely sense the magnitude of the bizarre conspiracy revealed by the record here. An investigation was conducted under the direct supervision of the United States Attorney. Charges by the professional burglar Barnes had involved police corruption. The total depredations ranged throughout the District of Columbia and its environs. The conspiratorial ring included Barnes, certain venal police officers, these appellants and other collaborators. One James Skeens came within the scope of the investigation. Skeens had been a customer of a jeweler, the appellant, Henry Klein. Skeens introduced the burglar Barnes to Klein who willingly became a fence. An arrangement was entered into as to the price Klein was to pay for stolen jewelry, and Klein, for his part, provided Barnes and other conspirators with the location of the residences of his own customers whose jewelry might be stolen.

As the investigation proceeded, Marsha Skeens met with the Assistant United States Attorney in charge of the investigation and with members of the investigating squad. She decided to coop-

9. In the present case, appellant Klein took the stand and was available for cross-examination by his co-defendants. One court has held that in such circumstances *Bruton* is not applicable. Santoro v. United States, 9 Cir., 402 F.2d 920 (1968). Such a holding, however, seems to be at variance with the Supreme Court's effort to protect a defendant from the prejudice of evidence which is inadmissible against him. Attempts to cross-examine the co-defendant about his out-of-court statement may only exacerbate the prejudice which *Bruton* sought to avoid. Moreover, when the Government knows that it plans to introduce a co-defendant's out-of-court statement, there is no reason why that defendant cannot be tried separately.

10. Appellant Hamilton separately challenges his conviction of conspiracy on the ground that evidence of a burglary for which he had already been convicted was introduced to prove his participation in the conspiracy. Hamilton argues that this situation "is tantamount to double jeopardy or *res judicata*." We think the law in this area is well established to the contrary. *See* Pereira v. United States, 347 U.S. 1, 74 S.Ct. 358, 98 L.Ed. 435 (1954).

erate, explaining that she thought she might be of assistance to her involved husband as well as to Barnes.

At a time when arrests had yet to be made, she participated in monitored phone calls with Klein on November 29 and December 21, 1965.

She ultimately persuaded her husband to become an informant, and conversations between Skeens and Klein were monitored on February 5 and February 7, 1966.

Prior to trial, the appellants moved to suppress the evidence gathered as a result of electronic surveillance. A court hearing was conducted in which both James Skeens and his wife Marsha testified as did various officers of the Metropolitan Police. The pre-trial judge expressly found that Skeens and his wife had prior knowledge of the intended surveillance and had given full consent that the conversations with Klein be monitored, recorded, and in due time, divulged.

The judge further concluded that there had been no violation of the Federal Communications Act and, in light of pre-Katz[1] rulings, that no constitutional rights had been abridged.

The appellants here had relied principally upon the Katz case and on United States v. White (7th Cir.) 405 F.2d 838, cert. granted 394 U.S. 957, 89 S.Ct. 1305, 22 L.Ed.2d 559 (1969).[2]

Two months after the White decision, the Supreme Court released its opinion in Desist v. United States.[3] There the

Court held that Katz is to be applied only to cases in which the prosecution seeks to introduce the fruits of electronic surveillance conducted after December 18, 1967.

Then came our decision in Wallace v. United States[4] where Judges McGowan, Tamm and Leventhal considered the appeal of the police officers who had been involved in the Barnes-Klein conspiracy. There, also, were raised questions concerning certain face-to-face and telephone conversations between appellants Wallace and Donohue and the same James Skeens about whom we have been writing. It was argued in the Wallace case that the recordings were inadmissible. Our court, however, pointed out:

"* * * The Supreme Court has now held that the exclusionary rule adopted in Katz shall not be applied to evidence obtained through electronic surveillance conducted before December 18, 1967, the date of the Katz decision, and the conversations involved here took place nearly two years before that date." [Citing Desist v. United States, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 and see Kaufer v. United States, 394 U.S. 458, 89 S. Ct. 1223, 22 L.Ed.2d 414]. See 412 F. 2d at 1100.

The Second Circuit had previously decided Kaufer v. United States,[5] and had expressly rejected the Seventh Circuit's White decision. The Supreme Court in its affirmance in the Kaufer case expressly relied upon Desist v. United States, supra.[6]

---

1. Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

2. The majority opinion of the Seventh Circuit noted that on its facts, On Lee v. United States, 343 U.S. 747, 72 S.Ct. 967, 96 L.Ed. 1270 (1952), "is directly in point and would control the disposition of this case if Katz had not supervened and if the Supreme Court had not on other occasions completely eroded the decisional basis of On Lee." 405 F.2d 838 at 847.

3. 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969).

4. 134 U.S.App.D.C. 50, 412 F.2d 1097 (1969). The Seventh Circuit came to a like conclusion in United States v. Teller, 412 F.2d 374, 377 (1969).

5. 406 F.2d 550, affirmed 394 U.S. 458, 89 S.Ct. 1223, 22 L.Ed.2d 414, rehearing denied 395 U.S. 917, 89 S.Ct. 1741, 23 L.Ed.2d 232 (1969).

6. The Tenth Circuit applying Desist noted that recordings involving one Epps had been made more than two years before December 18, 1967, and observed that it had first relied upon and had been "guided or perhaps misguided by

So the basic question in this case involving burglaries of scores of homes in Washington and perhaps two million dollars in loot is now up to the Supreme Court. Obviously, both Klein and the Government are entitled to an immediate and final decision. The evidence overwhelmingly establishes the guilt of all the appellants, including Klein. I mention Klein specifically for the recorded conversations were his own, were conducted with willing informants, Skeens and Mrs. Skeens, in whom he had misplaced his confidence, and the recordings corroborated testimony of Barnes and others. Quite in accord with the law as it stood before *Katz*,[7] there had been no trespass by the Government upon his person or his property.

Thus I agree that we should affirm the convictions of all named appellants.

I am authorized to state that Circuit Judge MacKINNON concurs in the foregoing opinion.

Katz v. United States." Doty v. United States, 416 F.2d 887, 893 (10 Cir. 1969).

7. Even if it could be said that Katz here applies, it should be remembered that unlike this case, neither party to the conversations in Katz knew of or consented to the electronic surveillance.

Students of the problem will note the concurrence of Mr. Justice Black in De-sist, *supra*, citing his dissent in Katz.