**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Timothy William KERSHNER and Albert William Smith, Jr., Defendants-Appellants.**

**No. 28443.**

United States Court of Appeals,
Fifth Circuit.

Oct. 6, 1970.

William R. Coleman, Jr., Augusta, Ga., for Kershner.

Dudley H. Bowen, Jr., Augusta, Ga., for Smith.

R. Jackson B. Smith, Jr., U. S. Atty., William T. Morton, Asst. U. S. Atty., Augusta, Ga., for plaintiff-appellee.

Before JOHN R. BROWN, Chief Judge, and GOLDBERG and CLARK, Circuit Judges.

CLARK, Circuit Judge:

This was a jointly-tried, three-defendant criminal case involving problems raised by deletions made in cross-implicating confessional statements to comply with the rule of *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). Two defendants, Timothy William Kershner and Albert William Smith, were convicted and the third, Lucien E. England, was acquitted. At trial the oral confession of each defendant was recounted in such a manner as to eliminate all parts of each statement implicating the other defendants. Smith and Kershner assert that the overall result of *Bruton* compliance was a confusingly incomplete and prejudicial trial procedure. Smith additionally asserts as error that his confession was obtained by improper and coercive investigatory procedures, and that he was entitled to a mistrial because a prosecution witness interjected an unsolicited hearsay statement declaring that another defendant had implicated him. We affirm both convictions.

## I. BACKGROUND.

The testimony revealed that in the early morning hours of February 1, 1969 Smith, Kershner and England, all military service men, murdered a civilian taxi driver on the army reservation at Fort Gordon, Georgia, in the perpetration of robbery in violation of 18 U.S. C.A. § 1111 (1969).

Smith and Kershner were found guilty as charged, but, apparently believing that England acted out of duress and co-ercion, the trial jury acquitted him and he is therefore not a party to this appeal.

A description of the actual murder is necessary only to frame the determinative issues before this court. Smith, Kershner and England hailed the taxicab of their civilian victim, Arnold Lee Butler, near the main part of Fort Gordon and directed him to carry them to Fort Crockett, a distant part of the same military reservation. In a remote area between these two points, the driver was asked to stop to permit one of the servicemen to urinate. At this time Butler was overpowered and, as Kershner drove slowly about the area, Smith and England dragged Butler into the woods where he was beaten and stabbed so viciously that he died.

The facts of the crime are not specifically challenged. Rather, the issues assigned to this court for its consideration center on the techniques of the investigation following the crime and on various technicalities of the trial procedure. On February 3, 1969, Smith and Kershner were individually and separately approached in their barracks at Fort Gordon by FBI agents and agents of the Army's Criminal Investigation Division (CID). They were each given full *Miranda* warnings before any questions were asked. Because other soldiers were using the barracks for an official formation and no private place was available for these interviews, Smith and Kershner were invited to go to the CID headquarters on the post. Both voluntarily agreed to go. Neither was placed under arrest at that time. Before the interrogation was resumed at CID headquarters, the FBI agents tendered additional *Miranda* warnings this time by printed forms which Smith and Kershner signed. During the barracks and CID investigative period, which lasted from approximately 7:00 A.M. to 10:30 A.M., Smith and Kershner each made oral and written statements in which they not only inculpated themselves but also implicated their co-conspirators. At approximately 10:30, the defendants were arrested and were immediately placed in automo-

biles and taken before the nearest United States Commissioner in Augusta, Georgia. By approximately 1:15 P.M. they were incarcerated.

Smith charges that his confession was obtained at a time when he was both sleepy and suffering from the after effects of excessive use of alcohol. He also asserts that since he was awakened, searched and kept under the constant surveillance and control of the FBI agents at the barracks and at CID headquarters his status during questioning amounted to a *de facto* arrest, which if true, would sufficiently lengthen the period between his arrest and the time he was taken before the Commissioner to raise a serious issue as to unnecessary delay.

Kershner assigns no error to the investigation procedures, but complains because the district court overruled motions for separate trials grounded not only on claims of inconsistent defenses but also, and more strongly, on the predicted use by the prosecution of confessional statements, made by each of the defendants against the other defendants, in violation of *Bruton.*

To meet the *Bruton* problem and still permit the joint trial to proceed, each government witness testifying with respect to inculpatory or confessory statements was cautioned and warned before his testimony was given. The basic ground rule which the district judge imposed was to restrict these witnesses to stating what each defendant admitted that he himself did, omitting any reference whatsoever to what that defendant stated as to actions of the other two defendants. In line with this procedure, Special Agents Englebright and Potter testified as to the results of their interrogation of Smith, Special Agent Gooding recounted the answers he was given by Kershner and Special Agent Dillard

did the same for England's confession. In each instance, counsel for the respective defendants inquired whether additional statements had been made and the responses clearly indicated to the jury that additional statements were made, but testimony as to these additional statements was not permitted by the trial court in order to comply with the *Bruton* created stricture on cross-incrimination by joint defendants.[1]

The result of the trial being conducted strictly as required to eliminate this problem now forms the primary ground for this appeal by both Smith and Kershner. Kershner asserts that he is entitled to have *his* entire confession admitted, not selected portions, that the *Miranda* warnings did not fully apprise him that only portions of his statement would be used against him, and, that out-of-court statements become unacceptable when tailored to fit the needs of investigative and prosecution officials. Similarly, Smith asserts that the trial court erred in admitting into evidence a highly concentrated and out-of-context synopsis, which was not fairly representative of what he had said.

## II. INVESTIGATION IRREGULARITIES.

▉ We reject Smith's contention that he was too drowsy and hung-over to be rational when he confessed. *Miranda* warnings were given him when he was first awakened. He was then permitted to use the barracks rest room facilities and to dress. More than one-half hour elapsed before the same warnings were repeated and the actual interrogation began. Smith recalled in detail the agents' activities even during this preliminary half hour period. Nothing in the record persuades us that the judge or jury erred in holding his statements to have been made with a rational awareness of the

---

1. The district court required that the complete written confessions of each defendant be placed in the record as special exhibits, but these confessions were not allowed to be seen or considered by the jury. They were admitted solely to furnish a point of overall reference to test the fairness of permitting testimony as to versions of each separate defendant's oral confession from which all material inculpating any other defendant had been deleted.

circumstances, particularly since the voluntariness of Smith's confession was determined by what has been termed a salutary system, *i. e.*, permitting the confession and the question of voluntariness to go to the jury, after the trial judge has made his own preliminary determination that there was no taint of compulsion, but without indicating his evaluation to the jury: United States v. Harper, 432 F.2d 100 (5th Cir. 1970); Kristiansand v. United States, 384 F.2d 301 (5th Cir. 1967).

■ ■ We must test any period of claimed delay in arraigning a defendant to determine if it is an unnecessary delay prohibited by Fed.R.Crim.P. 5(a), by calculating the time and examining the circumstances between the commencement of federal detention or arrest and such arraignment. Lovelace v. United States, 357 F.2d 306 (5th Cir. 1966). The arrests of Kershner and Smith took place at approximately 10:30 A.M. and although the arraignment did not take place for almost three hours, such a length of time was reasonable in view of the need to transport the now-arrested individuals from Fort Gordon to the nearest U. S. Commissioner. Moreover, it should be noted that the three hours involved were well within the six hour limit established by Omnibus Crime Bill. 18 U.S.C.A. § 3501(c) (1969).

It is a well established rule that an appellate court must sustain a conviction if, taking the view thereof most favorable to the Government, the evidence is sufficient to have withstood a motion for directed verdict of acquittal. Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); United States v. McGann, 431 F.2d 1104 (5th Cir. 1970). Although Smith's testimony indicated that he felt he was under arrest from the time he was first awakened, any valid basis for such an impression is clearly refuted by the testimony of the Government's witnesses.

■ We reject Smith's contention that his confession was obtained during a period of *de facto* arrest based on a com-

parison of the facts in the instant case with the facts in Orozco v. Texas, 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311 (1969), the most recent decision relating to *de facto* arrest. Orozco, an accused murderer, was asleep in his boarding house. At 4:00 A.M. four police officers, having been admitted by an unknown woman, entered his bedroom and began questioning him. By the testimony of the arresting officers, from the time he gave his name he was not free to leave. Without administering *Miranda* rights, the officers interrogated Orozco until he made a confession.

Smith's treatment was markedly different. At the outset, the FBI agents identified themselves and read full *Miranda* warnings to Smith and later, by having him read and sign a printed form, they further advised the defendant of the nature of his rights in the investigation process. The record fails to show that a reasonable person in Smith's position would have felt himself under any restraint or compulsion because of this questioning. Smith must have had this same impression because when he was invited to accompany the agents to CID headquarters he went there of his own free will.

■ The agents did frisk Smith for weapons at the barracks but such a frisking does not amount to an arrest. Terry v. State of Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L.Ed.2d 889 (1968).

It is true that when the FBI agents first contacted him they had evidence which linked Smith with the death of the taxi driver, but since they did not have sufficient information to establish probable cause they acted correctly in continuing their investigation without making a warrantless arrest.

### III. JOINT TRIAL PROCEDURES.

■ To begin at the beginning of this contention, which is raised by Smith and Kershner in slightly different contexts, we are called on to examine the exercise of the trial judge's discretion. Pursuant to the provisions of Fed.R.

Crim.P. 8(b), all defendants had been charged in the same indictment. Therefore when Smith moved the court for a severance the district judge was called upon to make a determination under Rule 14 as to whether a joint trial would be prejudicial. The appellate review of the exercise of that discretion is extremely narrow and the trial judge's discretion will not be disturbed unless movant makes a positive showing that he has been prejudiced by the ruling. Blachly v. United States, 380 F.2d 665 (5th Cir. 1967). No such showing was made in this case.

The overall conduct of the trial was likewise committed to the trial judge's sound discretion subject to review only on a clear showing of abuse, which does not appear. Scott v. United States, 263 F.2d 398 (5th Cir. 1959).

Even before the Supreme Court decided *Bruton* both State and Federal courts had followed the practice of permitting joint trials in which any reference that implicated a co-defendant was omitted from confessory statements before they were submitted for jury consideration. *See e. g.*, State v. Young, 46 N.J. 152, 215 A.2d 352 (1965) and Kramer v. United States, 115 U.S.App. D.C. 50, 317 F.2d 114 (1963). *Bruton in nowise undertook to abolish joint trials.* Rather, the rationale of the *Bruton* limitation clearly indicates that joint trials—even joint trials involving inculpatory confessions by co-defendants, were contemplated in the future.

■ Nor is there anything in *Bruton* to justify the conclusion that the deletion of the portion of a confession which implicates a co-defendant is *per se* invalid. The post-*Bruton* decisions of this court lend support to this position. In Posey v. United States, 416 F.2d 545 (5th Cir. 1969), we found no error where the trial judge had required over 100 deletions to be made before he allowed a confession to be read to the jury, which was not allowed to view the altered written document. The procedure required by the trial court in the case at bar, wherein a witness recounted the portions of an oral confession which did not implicate any co-defendant, is identical to the procedure approved in White v. United States, 415 F.2d 292 (5th Cir. 1969). We again hold here that, unless such a procedure distorts a confession, it may be used because it does not violate any constitutional right of the defendant to be confronted with the witnesses against him.

■ Kershner contends that his confession should not be admitted because the *Miranda* warnings he was given did not state that only selected portions of his confession would be used against him. Even the most cursory examination of the wording of the warning points up the fallacy of such an argument. The caveat stated that *"anything* you say *can* be used against you in court." Kershner was not told *"everything* you say *will* be used against you." Anyone who wants to understand the admonition clearly can do so. The English language is not sufficient to reach those who do not.

We must also examine Smith's contention that the court should have declared a mistrial when the government's witness, Long, after being cautioned only to testify with regard to what Kershner admitted he himself had done and having been questioned only as to Kershner's statements as to his own activity, blurted out, "He [Kershner] said Smith almost killed a man." The trial judge immediately ruled this voluntary interjection inadmissible hearsay and then and there gave a specific instruction to the jury to disregard the statement entirely.

This occurrence does not violate the *Bruton* principle. In fact, the Supreme Court there took care to express:

> "Not every admission of inadmissible hearsay or other evidence can be considered to be reversable error unavoidable through limiting instructions; instances occur in almost every trial where inadmissible evidence creeps in, usually inadvertently. 'A defendant is entitled to a fair trial but not a perfect one.' " Citations

omitted. 391 U.S. at 135, 88 S.Ct. at 1627.

■ We regard Long's voluntary retort as an example of the very type of inadvertence to which the Court referred. Even if it was error, it was harmless error beyond a reasonable doubt. United States v. Wade, 388 U.S. 218, 242, 87 S. Ct. 1926, 1940, 18 L.Ed.2d 1149 (1967); Chapman v. State of California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). *See also* Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969). The government introduced evidence wholly apart from this chance remark which pointed overwhelmingly to the guilt of Smith.

■ The most serious issue raised by the complaints of Kershner and Smith in objecting to the trial court's procedure is that achieving literal compliance with the letter of the *Bruton* decision has weakened or distorted the truth of their statements to an extent that the overall result was an unfair trial. Certainly the admission of an entire confession may be required so that exculpatory and mitigating parts will be included. United States v. Wenzel, 311 F.2d 164 (4th Cir. 1962). This same issue was raised in *Posey, supra,* but there, as here, the defendants could point to no concrete examples where any exculpatory or explanatory statements had been deleted. This court has in its possession the full written confessions of the appellants, and a careful comparison of these full written confessions and the versions of the oral confessions testified to by the government's witnesses permit us to conclude that no prejudicial shortcomings existed in any of the oral statements. It is proper for a reviewing court to look at all of the evidence in the record, including that which was withdrawn from the jury, if the same be relevant to the decision of the appeal pending before it. Rose v. Great Northern Rwy. Co., 268 F.2d 674 (8th Cir. 1959).

CONCLUSION.

There were no irregularities in the investigatory phase of this action which deprived Smith of any substantial right. The joint trial procedures adopted and followed by the court below fully comported with fairness and justice and did not deprive either defendant of a fair and impartial trial.

Finding no error, the convictions of Albert William Smith, Jr. and Timothy William Kershner are affirmed.