William O. DUGGAR, Petitioner-
Appellant,

v.

UNITED STATES of America,
Respondent-Appellee.

No. 337–69.

United States Court of Appeals,
Tenth Circuit.

Oct. 29, 1970.

Richard S Hays, Denver, Colo. (Hemminger, McKendree, Vamos & Elliott, Denver, Colo., on the brief) for petitioner-appellant.

Edward H. Funston, Asst. U. S. Atty., (Robert J. Roth, U. S. Atty., on the brief) for respondent-appellee.

Before PHILLIPS, HILL and HICKEY,* Circuit Judges.

ORIE L. PHILLIPS, Circuit Judge.

By a six-count indictment, returned in the United States District Court for the District of Kansas, Duggar, Billy E. Dillon, Jack B. Harwoods, Mike B. Bartello, and Kenneth Endicott were charged in the first five counts with violations of 18 U.S.C. § 1952,[1] and in the sixth count with conspiracy to violate § 1952, supra. At a trial on the indictment, Dillon and Bartello were convicted on Counts 2, 3, 4 and 5 and the conspiracy count; Duggar was convicted on the conspiracy count, and Endicott was convicted on all six counts. Harwoods died prior to the trial. Each of the defendants so convicted appealed to this court, and the convictions were affirmed, except as to Bartello. See Dillon v. United States, 10 Cir., 391 F.2d 433.

Duggar was sentenced to imprisonment in the custody of the Attorney General for a period of three years. He filed a motion in the United States District Court for the District of Kansas, under 28 U.S.C.A. § 2255, to vacate his sentence and for a new trial. From an order denying that motion, this appeal is prosecuted by Duggar.

* Judge Hickey, because of his death on September 22, 1970, did not participate in this opinion.

1. A section of the Antiracketeering Act.

Duggar is a Medical Doctor. At the trial on the indictment, Richard Eckberg, an F.B.I. Agent, testified to an oral confession made to him by Dillon, which tended to implicate Duggar as a participant in the commission of the offenses charged in the indictment, especially with respect to a part of the conspiracy which contemplated the establishment of an abortion ring, and the carrying out of illegal abortions in space rented in the Medical Towers Building in Wichita, Kansas, and the securing and placing in such space of equipment to carry out such illegal abortions. Eckberg testified that he reduced the oral statement to writing, and the writing was signed by Dillon. The written confession was thereafter introduced in evidence by the Government.

The names of Duggar and the other defendants, and the portions thereof that related to them, were not deleted either from the oral confession testified to by Eckberg or from the written confession. At a hearing before the court, in the absence of the jury, the court decided that the oral and written confessions might be introduced in evidence without such deletions, if the jury was instructed that the confessions could be considered only as evidence against Dillon and were hearsay and inadmissible evidence as to the other defendants, and should not be considered by the jury in determining whether or not Duggar and the other defendants were guilty of any of the offenses charged. The court overruled the objection of counsel for Duggar to the admission into evidence of the oral confession and the written confession. With such a cautionary instruction, the testimony of Eckberg as to the oral confession, and the written confession were permitted to go to the jury.

At the trial, Dillon took the stand and testified in his own behalf. In his direct examination, he did not inculpate or incriminate Duggar in any way in the commission of the offenses charged.

Following his direct examination, Dillon was cross-examined by counsel for Duggar. The pertinent part of that examination reads as follows:

"Q. Mr. Dillon, now, prior to September 23rd, 1964, would you repeat again how long you had known Dr. William Orlando Duggar?

"A. The length of time that I knew him?

"Q. Yes, sir, the best you can.

"A. Probably less than a month.

"Q. Now, could you tell the ladies and gentlemen of the jury about many times you had seen Dr. Duggar up to September the 23rd, 1964?

"A. I think twice.

\*    \*    \*    \*    \*    \*

"Q. Now, during the course of your acquaintanceship with Dr. Duggar, did you ever engage in a conversation with Dr. Duggar relating to the act of abortion?

"A. I never did, sir.

"Q. As you sit here now, do you recall any time that you were in his presence as to whether you have heard Dr. Duggar engage in conversation of abortion with anyone?

"A. I have not.

"Q. I think in the, if you will recall that in Mrs. Doggett's report of the evening spent with her and her husband, Lieutenant, at which your wife was present—

"A. Yes, sir.

"Q. —and Mr. Harwoods was present, do you recall that part of the report?

"A. Yes, sir.

"Q. Referring to that.

"A. Yes, sir.

"Q. Do you remember the conversation relative to Dr. Duggar?

"A. Yes, I remember Mr. Harwoods stated that Dr. Duggar was his personal, and I believe he said, family physician and he was a very learned man and well respected physician.

"Q. You had met Dr. Duggar by that time, had you not?

"A. Yes, sir.

\* \* \* \* \* \*

"Q. (Continuing) If I remember your direct examination, Mr. Dillon, you never heard any conversation between anyone relative to Dr. Duggar having a part to play in any Bingo operation which you have testified to Mr. Harwoods might have been interested in; is that true?

"A. That is true, sir.

"Q. As I remember your direct examination, you never heard anyone say that Dr. Duggar was to participate in any abortion activity?

"A. I definitely did not."

Following the cross-examination by counsel for Duggar, counsel for the Government cross-examined Dillon. The pertinent part of that cross-examination reads as follows:

"Q. (By Mr. Goodwin) When was the first time you met Dr. Duggar?

"A. Sometime in August, Counsellor.

"Q. As a matter of fact, sir, it was the first of August, was it not?

"A. I can't answer this, sir.

"Q. As a matter of fact, sir, was it on the 3rd of August when you went to the air port and met him when he arrived on an airplane?

"A. This is probably true, the first time I met him, he did arrive on an airplane, yes.

"Q. And after that time you were with him on visits to the office of Dr. Darling in El Dorado, Kansas, were you not?

"A. I don't remember any visit that I made with Dr. Duggar.

\* \* \* \* \* \*

"Q. I am asking you, sir, if you recall making the statement to the FBI that they told you that all of them flew from Detroit, Michigan?

"A. I don't remember this and if it was, it was wrong, because this is not the way it happened.

"Q. But you do not recall making this statement to the FBI?

"A. At this time I do not recall it, sir.

"Q. And, as a metter of fact, sir, was it not during that meeting that you were told that Dr. Duggar was the medical connection for the abortion business?

"A. That is definitely wrong. Mr. Harwoods—

"Q. Do you recall making that statement to the FBI?

"A. I don't recall what was in the statement now.

"Q. Do you recall saying to the FBI 'Jack told me that Dr. Duggar was his medical connection as far as the abortions were concerned'?

"A. No.

\* \* \* \* \* \*

"Q. And, as a matter of fact, sir, was not Dr. Duggar present during the time that the conversation and agreement was made between Harwoods and Dr. Darling?

"A. I never heard the conversation about abortions on the 3rd of August, which was this meeting. Dr. Duggar was downstairs with me, as I have already testified to, carrying a plaque in the Ferguson campaign.

"Q. Now, as a matter of fact, sir, referring to the meeting which took place after that, was not Dr. Duggar present when Darling and Jack Harwoods made an agreement regarding the referral of abortion business?

"A. This was not on this meeting. The first that I heard of abortions—

"Q. I am just asking you, sir, was not Dr. Duggar present when

Harwoods and Darling made the agreement regarding abortions.

"A. He was not, to my knowledge, because I wasn't there.

"Q. Do you recall making a statement to the FBI on the 23rd of September in which you said 'Dr. Duggar was along and present when Darling and Jack made the agreement regarding the abortion cases'?

"A. I don't remember this at all, sir."

Before the trial on the indictment, Duggar moved for a separate trial, under Rule 14 of the Federal Rules of Criminal Procedure. The motion was denied.

This court, in its opinion on the direct appeal, 391 F.2d 433, at 438 said:

"It is contended prejudice resulted from the combined trial because the names of Endicott, Bartello and Duggar were not deleted from statements made by Dillon which were admitted into evidence. Although the court instructed the jury that the statements could only be considered in determining the guilt of Dillon, it is contended the cautionary instruction did not cure the prejudice.

\*   \*   \*   \*   \*   \*

" \*   \*   \* The cautionary instruction cured what might otherwise have been resulting prejudice. 'We may \*   \*   \* fairly proceed on the basis that the jury followed these instructions.' Delli Paoli v. United States, 352 U.S. 232, 241, 77 S.Ct. 294, 299, 1 L.Ed.2d 278 (1957)."

Duggar filed a petition for certiorari in the Supreme Court of the United States to review the decision of this court. While such petition was pending in the Supreme Court, that court on May 20, 1968, handed down its decision in Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476, overruling

Delli Paoli v. United States, 352 U.S. 232, 77 S.Ct. 294, 1 L.Ed.2d 278. Thereafter, on October 14, 1968, the Supreme Court denied Duggar's petition for certiorari. See 393 U.S. 825, 89 S.Ct. 87, 21 L.Ed.2d 96.

In footnote 5 to his dissenting opinion to the decision of the Second Circuit affirming the conviction of Delli Paoli (United States v. Delli Paoli, 2 Cir., 229 F.2d 319, at 323) Circuit Judge Frank said:

"Often when, in civil suits, hearsay is received under an exception to the hearsay rule, the opponent has the opportunity to call to the stand and examine the person said to have made the out-of-court statement. But here the statement was that of Paoli's codefendant who, relying on his privilege, did not take the stand and who therefore could not be called as a witness by Paoli."

The Sixth Amendment to the Constitution of the United States provides:

"In all criminal prosecutions, the accused shall enjoy the right \*   \*   \* to be confronted with the witnesses against him; \*   \*   \*."

In its opinion in Bruton v. United States, supra, the Supreme Court said:

" \*   \*   \* in Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 we confirmed 'that the right of cross-examination is included in the right of an accused in a criminal case to confront the witnesses against him' secured by the Sixth Amendment, *id.*, at 404, 85 S.Ct. 1065; 'a major reason underlying the constitutional confrontation rule is to give a defendant charged with crime an opportunity to cross-examine the witnesses against him.'[2] *Id.*, at 406–407, 85 S.Ct. 1065, at 1069. (391 U.S. p. 126, 88 S.Ct. p. 1623).

\*   \*   \*   \*   \*   \*

" \*   \*   \* Plainly, the introduction

---

2. Another reason is to give the jury, which is the sole judge of the credibility of the witnesses and the weight to be given their testimony, the opportunity to see the witness when he testifies and observe his demeanor on the witness stand. See California v. Green, 399 U.S. 149, 158, 90 S.Ct. 1930, 26 L.Ed.2d 489.

of Evans' confession added substantial, perhaps even critical, weight to the Government's case in a form not subject to cross-examination, since Evans did not take the stand. Petitioner thus was denied his constitutional right of confrontation. (p. 127, 88 S.Ct. p. 1623)

\* \* \* \* \* \*

" \* \* \* We hold that, because of the substantial risk that the jury, despite instructions to the contrary, looked to the incriminating extrajudicial statements in determining petitioner's guilt, admission of Evans' confession in this joint trial violated petitioner's right of cross-examination secured by the Confrontation Clause of the Sixth Amendment. We therefore overrule *Delli Paoli* and reverse." (p. 126, 88 S.Ct. p. 1622)

In the instant case, Dillon was not only cross-examined by counsel for Duggar, but also by counsel for the Government. In his cross-examination by counsel for Duggar, he refuted the statements made in his alleged oral and written confessions inculpating Duggar, and his testimony in his cross-examination by the Government tended to exculpate Duggar of any guilt.

We think it clear that the Supreme Court in the Bruton case in a large part predicated its reversal of the conviction of Bruton and its overruling of its former decision in Delli Paoli on the fact that in each of such cases there was no opportunity afforded to the defendant to cross-examine his codefendant, who made the confession which was introduced in evidence in those cases.

Hence, we conclude that the instant case is clearly distinguishable from both Bruton and Delli Paoli,[3] and that the order denying the motion to vacate should be affirmed.

---

3. The following decisions in other circuits support our conclusion:

United States v. Insana, 2 Cir., 423 F.2d 1165, 1168;

James v. United States, 5 Cir., 416 F. 2d 467, 475;

Santoro v. United States, 9 Cir., 402 F.2d 920, 922.

See also, California v. Green, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489.