STATE of Maine

v.

Richard C. WING.

STATE of Maine

v.

Brent G. MEDRANO.

Supreme Judicial Court of Maine.

Aug. 30, 1972.

John B. Beliveau, County Atty., Lewiston, Paul R. Dionne (Law Student), for plaintiff.

Paul P. Murphy, Lewiston, for Wing.

Paul C. Fournier, Lewiston, for Medrano.

Before DUFRESNE, C. J., and WEBBER, WEATHERBEE, POMEROY, WERNICK and ARCHIBALD, JJ.

WEBBER, Justice.

In these two cases the defendants were tried jointly upon separate indictments charging robbery. Although separately briefed and argued, the appeals of both defendants from conviction by jury verdict can be disposed of by a single opinion.

The jury could have found beyond a reasonable doubt that the two defendants and a third party were riding about the City of Lewiston in an automobile owned and operated by Wing; that they offered a ride to one Morin, a hitchhiker and the victim of this robbery; that after a whispered consultation Wing drove the car past Morin's destination and onto a back road; that Medrano produced a hunting knife owned by Wing and kept in his automobile, put the knife to Morin's throat and demanded his money; that Morin handed over his wallet from which Medrano removed the money which he pocketed; that Medrano then told Wing to stop and let Morin out but Wing declined and continued on; that the automobile was halted

by a flat tire; that while Wing changed tires, Medrano held Morin at knife point and relieved him of his watch; that when Medrano expressed an intention to take Morin's jacket, Wing disagreed and told Medrano to let Morin keep his jacket; that Medrano made no further effort to take the jacket; that Morin was finally permitted to leave the car in an isolated area and Wing drove away with the lights of the vehicle turned off; that Wing received two dollars of Morin's money from Medrano to buy gasoline for the car; that the defendants were subsequently apprehended and gave voluntary statements to the police confirming the events described by Morin; and that after apprehension Wing voluntarily produced the knife used by Medrano from the glove compartment of his automobile. Wing's only theory of defense was that his participation in these events was induced entirely by fear of Medrano. This theory was obviously rejected by the jury. Wing contends that the evidence does not support his conviction and his motion for acquittal should have been granted. Medrano for his part does not challenge the sufficiency of the evidence to prove his guilt and bases his appeal wholly on alleged trial errors. On the facts above stated Wing's contention must fail.

Before the trial commenced the State moved for joinder of these two cases for trial. The State indicated its intention to introduce into evidence inculpatory oral admissions [1] made to the police by each defendant, but in such form as to satisfy the teachings of Bruton v. United States (1968) 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed. 476. In short, the State proposed to instruct its witnesses to omit from the oral statement given by each codefendant any express or implied references which would tend to implicate the other. Upon this assurance and over the vigorous opposition of both defendants, the Court ordered joinder. In the course of the presentation of the State's case and after a preliminary hearing and a ruling by the Court on the issue of voluntariness, not challenged here, a police detective was permitted to narrate in the presence of the jury the substance of oral statements made to him severally by Wing and Medrano. In the case of Wing, he stated that Wing told him that his car was the one used in the commission of the crime; that he was the driver of the car throughout the incident; that he was present when the money was taken from the victim; that he was present when the watch was taken; that he was present and the operator of the car that took the victim out on the back road and dropped him off; and that the knife that was used on the night of the incident was presently in his car. On cross-examination by Wing's counsel, the officer stated that Wing said the knife that was used was his knife and that he "went along with the idea" because he was in fear of Medrano. In the case of Medrano, the officer stated that Medrano said that he was present during the time the incident took place; that he was present when the idea was "brought up with two other people;" that he was present and a passenger in the back seat when a hitchhiker was picked up on Canal Street; that he had the knife in his possession, holding the knife in the direction of the victim, and demanding his money and wallet; that he got the money and the wallet; that he was also present and a passenger in the back seat when the car kept going in the direction of the back roads in Lewiston and Lisbon; that he was present in the back seat when the watch was taken from the victim; and that he was present when the victim was "left off" on the back roads in Lisbon. Cross-examination revealed that Medrano also said the knife wasn't his.

Wing elected to testify in his own behalf and was vigorously cross-examined by both the State's and Medrano's counsel.

1. In a colloquy outside the presence of the jury the Court was informed that the State also had written statements signed by the defendants which would not be introduced by the State because of a possible *Bruton* violation if this were done.

Although he gave some further details and emphasized his fear of Medrano, his evidence in no way contradicted that given by Morin and the other State's witnesses. Medrano chose not to present himself as a witness.

■ The defendants assert that, entirely apart from any application of the *Bruton* rule, they were disadvantaged by the joinder and thus the ruling of the Court constituted an abuse of discretion. M.R.Crim. P., Rules 13 and 14 provide:

"Rule 13.  *Trial Together of Indictments or Informations*

"The Court may order two or more indictments or informations or both to be tried together if the offenses, and the defendants if there is more than one, could have been joined in a single indictment or information. The procedure shall be the same as if the prosecution were under such single indictment or information.

"Rule 14.  *Relief From Prejudicial Joinder*

"If it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires." [2]

In State v. Coty (1967–Me.) 229 A.2d 205, 213 we made it clear that a defendant claiming that an order of joinder constituted an abuse of discretion would be required to show that he had been prejudiced thereby.  We quoted with approval from Commonwealth v. Kloiber (1954) 378 Pa. 412, 106 A.2d 820, 822 (cert. den. 348 U.S. 875, 75 S.Ct. 112, 99 L.Ed. 688) in which the Court said, "Especially is a joint trial

permissible, if not advisable, when the crimes charged grew out of the same acts and much of the same evidence is necessary or applicable to both defendants."  In a day when courts are encountering unprecedented difficulty in relieving crowded dockets and affording speedy trials, there is a substantial public interest in avoiding unnecessary duplication in trial procedure. The many advantages of joinder have been often repeated and emphasized.  In *Bruton* the Court noted that joint trials would (a) conserve public funds, (b) diminish inconvenience to witnesses and public authorities and (c) avoid delays in bringing the accused to trial.  Mr. Justice White in his dissenting opinion stated an additional and valid reason for joinder when he said,[3] "It is also worth saying that separate trials are apt to have varying consequences for legally indistinguishable defendants.  The unfairness of this is confirmed by the common prosecutorial experience of seeing codefendants who are tried separately strenuously jockeying for position with regard to who should be the first to be tried."  In United States v. Barber (1971) 3 Cir., 442 F.2d 517, 529, the Court said,

"Generally speaking where several defendants are jointly indicted they *should* be tried together, particularly where the charges against them arise out of joint acts allegedly committed by each in the presence of each other.  In such cases, joint trials *are favored* in the interest of conserving judicial economy, avoiding duplicitous, time-consuming and expensive trials, conserving public funds, diminishing inconvenience to witnesses and public authorities, and promptly trying those accused of crime.

\*  \*  \*  \*  \*  \*

Denial of severance is not a ground for reversal on appeal unless *clear prejudice* and abuse of discretion is shown."  (Emphasis ours)

---

2.  The Federal rules are identical.  Glassman, Maine Practice, Reporter's Notes, Pages 116 and 118.

3.  At page 143 of 391 U.S., at page 1631 of 88 S.Ct.

See also Caton v. United States (1969) 8 Cir., 407 F.2d 367, 372 (cert. den. 395 U.S. 984, 89 S.Ct. 2149, 23 L.Ed.2d 773). In the instant case, unless there was a violation of the *Bruton* rule, the defendants have shown no "clear prejudice" resulting from their forced participation in a joint trial.

In *Bruton* the oral confession of one codefendant, expressly implicating the other, was admitted in evidence in a joint trial. The confessing codefendant did not take the witness stand and thus no opportunity to cross-examine him was afforded. The trial court gave the jury a cautionary instruction that although the oral confession was competent evidence as against the confessor, it was inadmissible hearsay as against his codefendant and must be disregarded in determining the latter's guilt or innocence.[4] The Court concluded that a jury would be unable to obey this instruction and effectively put out of mind "powerfully incriminating extrajudicial statements of a codefendant."[5] The Court also held that the recognized advantages of joinder must yield to the constitutional right of confrontation whenever a codefendant is subjected to a "substantial threat" of deprivation of that right. In the instant case the defendants, recognizing that in its deleted form as presented to the jury, the oral statement of each defendant contained no express or implied implicating reference to the other, contend that although there was no violation of the letter of the *Bruton* rule, there was a clear violation of its "spirit" which should be viewed as ground for reversal.[6]

There have been many cases decided since 1968 in which courts have wrestled with the difficult task of analyzing the *Bruton* rule and applying it to diverse fact situations. There has emerged a discernible tendency to limit *Bruton* to its own facts or to facts which manifest with equal clarity the prejudice and constitutional deprivation which *Bruton* sought to avoid. In United States ex rel. Catanzaro v. Mancusi (1968) 2 Cir., 404 F.2d 296, 300 appellant argued that "the failure of the trial court to grant his motion for a separate trial prejudiced his right to a fair trial," relying on *Bruton*. The Court distinguished *Bruton* in these terms:

"The reasoning of *Hill*[7] and *Bruton* is not persuasive here. Both of those cases involved a defendant who did not confess and who was tried along with a codefendant who did. In our case Catanzaro himself confessed and his confession *interlocks with and supports* the confession of McChesney.

Where the jury has heard not only a codefendant's confession but the defendant's own confession no such 'devastating' risk attends the lack of confrontation as was thought to be involved in *Bruton*." (Emphasis ours)

So also in United States ex rel. Duff v. Zelker (1971) 2 Cir., 452 F.2d 1009, 1010, the petitioner[8] Duff claimed the admission of the written statements of Ferguson and Hill had violated the *Bruton* rule. The Court found these statements to be "similar to Duff's own confessions, written and oral, which placed him at the scene with a fair implication of knowing participation." After citing and quoting *Catanzaro*, the Court concluded, "In the light of Duff's undisputed presence at the scene, Ferguson's and Hill's statements were not a 'vitally

---

4. A similar instruction was given in the instant case. Except for the alleged application of *Bruton*, no objection was noted to the form of the instruction as given.

5. Delli Paoli v. United States (1957) 352 U.S. 232, 77 S.Ct. 294, 1 L.Ed.2d 278, holding the contrary, was expressly overruled.

6. *Bruton* was held to be retroactive and applicable to the States in Roberts v. Russell (1968) 392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100.

7. United States ex rel. Hill v. Deegan, (1967-S.D.N.Y.) 268 F.Supp. 580.

8. Duff, petitioner for the writ of habeas corpus, had been originally jointly tried with Ferguson and Hill.

important part of the prosecution's case' against him. * * * A limiting instruction as that given here may be 'adequate to protect appellant's constitutional rights' notwithstanding *Bruton.*" The Supreme Court has itself noted in Dutton v. Evans (1970) 400 U.S. 74, 86, 91 S.Ct. 210, 218, 27 L.Ed.2d 213 that the "primary focus" in *Bruton* was on whether the jury in the circumstances presented could reasonably be expected to follow the instructions to disregard the confession of the codefendant when considering the defendant's case. In Slawek v. United States (1969) 8 Cir., 413 F.2d 957, 962, 964 the Court said, "The *Bruton* rule, with its emphasis on 'substantial risk' and 'powerfully incriminating extrajudicial statements of a codefendant' obviously must be applied on a case-to-case basis." In *Slawek* there was no express reference to the appellant in his codefendant's statement but only a reference to "three other fellows" otherwise unidentified. The Court took into account the evidence corroborating guilt and, applying the *Bruton* rule "with practicality and common sense," concluded that *Bruton* was not controlling on the facts presented.

There is ample authority to support the proposition that when a witness is relating statements given to him by a defendant, a fair deletion of all references, express or implied, to any other defendant is a proper and approved method of avoiding prejudice and the *Bruton* dilemma. Mr. Justice Marshall, dissenting in Nelson v. O'Neil (1971) 402 U.S. 622, 636, 91 S.Ct. 1723, 1730, 29 L.Ed.2d 222 warmly recommended the practice proposed by the American Bar Association's Project on Standards for Criminal Justice, Advisory Committee on the Criminal Trial, Sec. 2.3 of which suggests with respect to severance of defendants:

"(a) When a defendant moves for a severance because an out-of-court statement of a codefendant makes reference to him but is not admissible against him, the court should determine whether the prosecution intends to offer the statement in evidence at the trial. If so, the court should require the prosecuting attorney to elect one of the following courses:

(i) a joint trial at which the statement is not admitted into evidence;

(ii) a joint trial at which the statement is admitted into evidence *only after all references to the moving defendant have been effectively deleted;* or

(iii) severance of the moving defendant." (Emphasis ours)

The deletion device was held to be an effective means of avoiding the *Bruton* problem in United States v. Trudo (1971) 2 Cir., 449 F.2d 649, 652; was inferentially approved as proper procedure in United States v. Kress (1971) 9 Cir., 446 F.2d 358, 361, and Close v. United States (1971) 4 Cir., 450 F.2d 152, 153; and termed an "approved protective measure" in State v. Young (1965) 46 N.J. 152, 215 A.2d 352, 355. In United States v. Kershner (1970) 5 Cir., 432 F.2d 1066, 1069, 1071 the procedure followed was virtually identical to that employed in the instant case. Because of that similarity we quote at length from *Kershner,* as follows:

"To meet the *Bruton* problem and still permit the joint trial to proceed, each government witness testifying with respect to inculpatory or confessory statements was cautioned and warned before his testimony was given. The basic ground rule which the district judge imposed was to restrict these witnesses to stating what each defendant admitted that he himself did, omitting any reference whatsoever to what that defendant stated as to actions of the other two defendants. * * * In each instance, counsel for the respective defendants inquired whether additional statements had been made and the responses clearly indicated to the jury that additional statements were made, but testimony as to these additional statements was not permitted by the trial court in order

to comply with the *Bruton* created stricture on cross-incrimination by joint defendants. * * *

"Even before the Supreme Court decided *Bruton* both State and Federal courts had followed the practice of permitting joint trials in which any reference that implicated a co-defendant was omitted from confessory statements before they were submitted for jury consideration. * * * *Bruton* in nowise undertook to abolish joint trials. Rather, the rationale of the *Bruton* limitation clearly indicates that joint trials—even joint trials involving inculpatory confessions by co-defendants, were contemplated in the future.

"Nor is there anything in *Bruton* to justify the conclusion that the deletion of the portion of a confession which implicates a co-defendant is *per se* invalid. The post-*Bruton* decisions of this court lend support to this position. * * * We again hold here that, unless such a procedure distorts a confession, it may be used because it does not violate any constitutional right of the defendant to be confronted with the witnesses against him."

The *Kershner* Court went on to point out that when a statement is thus altered by deletion, the defendant whose statement it is may properly require that any omitted portions which are exculpatory, mitigating, or explanatory be included for his benefit. In the instant case that was done with respect to Wing's alleged fear of Medrano.

We conclude that these codefendants were not prejudiced by joinder and thus the procedure followed in this case ultimately created no violation of the Bruton rule. As to Wing, the deletion device operated successfully when the officer's relation of

Medrano's statement in no way incriminated Wing. It must be borne in mind, however, that use of the deletion device carries with it the risk that counsel for one codefendant, in the course of a proper cross-examination of the witness who has related the statement of that codefendant, may cause the witness to disclose a part of that codefendant's admission which does incriminate the other codefendant. That is precisely what occurred in the case of Medrano. Wing's attorney cross-examined the officer concerning parts of Wing's statement, not included in his direct examination, which he hoped might be considered exculpatory as to Wing. Limitation on his right to do so would in our view have been prejudicial to Wing. The officer then revealed for the first time that Wing had stated that he acted out of fear of Medrano. Medrano was then incriminated by Wing's statement. In this case, however, any prejudicial effect upon Medrano attributable to the joinder was effectively eliminated when Wing elected to become a witness, testified to the entire substance of his statement to the officer including his incrimination of Medrano, and thereafter submitted to unlimited cross-examination by Medrano's counsel. It has been universally held that the right to confrontation is fully satisfied when the confessing codefendant becomes a witness. California v. Green (1970) 399 U.S. 149, 90 S.Ct. 1930, 1938, 26 L.Ed.2d 489; United States v. Rice (1970) 9 Cir., 435 F.2d 836, 837;[9] United States v. Sims (1970) 5 Cir., 434 F.2d 258, 259; Duggar v. United States (1970) 10 Cir., 434 F.2d 345, 349; Government of the Virgin Islands v. Rivera (1971) 3 Cir., 442 F.2d 407, 408; Jackson v. United States (1970) 142 U.S.App.D.C. 19, 439 F.2d 529, 530; United States ex rel. Pugach v. Mancusi (1971) 2 Cir., 441 F.2d 1073, 1075. When one codefendant elects to testify, the other is "fully free" to cross-examine him. Nelson v. O'Neil (1971) 402

---

9. To the same effect Mitchell v. United States (1970) 9 Cir., 434 F.2d 230, 231; Mendez v. United States (1970) 9 Cir., 429 F.2d 124, 128; Wade v. Yeager (1969) 3 Cir., 415 F.2d 570, 572. These cases preceded the 3rd and 9th Circuit cases cited in the text of our opinion.

**424**

U.S. 622, 624, 91 S.Ct. 1723, 1725, 29 L.Ed. 2d 222.

■ For the many reasons stated above we are satisfied that the *Bruton* rule is not applicable on the facts of this case. But even if it were deemed that error was committed, such error was harmless beyond a reasonable doubt. The testimony of the victim Morin as to what occurred was not contradicted but indeed was fully supported by the testimony of the codefendant Wing. Wing's assertion that his participation in the robbery was coerced by fear of Medrano presented a jury question. The jury could properly conclude, however, that his bare statement that he acted out of fear found no support in the factual evidence. He was not threatened by Medrano either by words or use of the knife. On two occasions he firmly and successfully opposed his will to that of Medrano. He was the owner of both car and knife. His conduct both during the robbery and immediately afterward could be viewed by the jury as inconsistent with that of an innocent man forced into a criminal act against his will. The Supreme Court recently held that when the independent evidence, apart from tainted hearsay statements, overwhelmingly points to guilt, any error with respect to the admission of such statements may be viewed as harmless. Schneble v. Florida (1972) 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed. 2d 340.[10] Courts have stated their conception of the harmless error test in varying forms. In Simpson v. Wainwright (1971) 5 Cir., 439 F.2d 948, 952 the Court found a *Bruton* violation to be harmless error where guilt was "overwhelmingly established by other testimony" and there existed "no reasonable possibility that the jury would have acquitted (defendant) had

the extra-judicial statements of the co-defendants not been admitted." And in a similar situation in Stone v. United States (1970) 2 Cir., 435 F.2d 1402, 1406, the Court said, "The effect of an error is to be gauged by 'the probable impact of the [statements] on the minds of an average jury.' Harrington v. California, 395 U.S. 250, 254, 89 S.Ct. 1726, 1728, 23 L.Ed.2d 284 (1964). We believe beyond a reasonable doubt that the jury would not have reached a different verdict solely on the basis of the properly admitted evidence." The "harmless error" rule has been frequently applied in *Bruton* situations. Hamilton v. United States (1970) 139 U.S. App.D.C. 368, 433 F.2d 526, 531; United States v. Harris (1970) 5 Cir., 433 F.2d 350, 351; United States v. Kershner, supra; United States v. Levinson (1968) 6 Cir., 405 F.2d 971, 988; Metropolis v. Turner (1971) 10 Cir., 437 F.2d 207, 208; United States v. Brown (1971) 6 Cir., 452 F.2d 868; United States ex rel. Ross v. LaVallee (1971) 2 Cir., 448 F.2d 552, 554; United States v. Mendoza (1971) 9 Cir., 441 F.2d 1107, 1108. The Supreme Court recently applied the "harmless error" rule in a case involving the deprivation of the right to counsel in Milton v. Wainwright, 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1. In the instant case, if there were error (and we detect none), it was at most harmless error by any standard.

The appellant Medrano seeks to raise two other issues. Neither point was raised below and in any event neither point has merit.

The entry in each case will be

Appeal denied.

---

10. We deem it unnecessary here to decide whether or not we might apply an even more rigorous test of harmless error than that which governed *Schneble*. Suffice it to say that on these facts there was harm-

less error beyond a reasonable doubt, even applying what may be considered the more rigorous rule applied in the prior case of Chapman v. California (1967) 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705.