STATE of Maine

v.

**Kenneth BIRMINGHAM.**

Supreme Judicial Court of Maine.

Argued June 12, 1987.
Decided July 2, 1987.

James E. Tierney, Atty. Gen., Wayne S. Moss, Janet M. McClintock (orally), Augusta, for the State.

Marvin H. Glazier (orally), Vafiades, Brountas & Kominsky, Bangor, for defendant.

Before McKUSICK, C.J., and NICHOLS, GLASSMAN, SCOLNIK and CLIFFORD, JJ.

McKUSICK, Chief Justice.

Kenneth Birmingham appeals from his conviction of murder, 17–A M.R.S.A. § 201(1)(A) (1983), by the Superior Court (Penobscot County) after a jury-waived trial. Birmingham contends that his police station confession was involuntary and should have been suppressed and that the State adduced insufficient evidence that he had acted intentionally and knowingly in killing Sherri Spofford. We find no merit in either contention.

Evidence adduced at trial permitted the Superior Court justice to find beyond a reasonable doubt that Birmingham, distraught over the engagement to another man of his former girlfriend, Sherri Spofford, stabbed her six or seven times as they sat in her car in a deserted parking lot in Brewer on December 9, 1985. Police discovered Ms. Spofford's body in the locked car later that evening, and the following morning questioned Birmingham at his home. Birmingham steadfastly denied involvement and voluntarily agreed to answer further questions at the Brewer po-

lice station. During questioning at the station over a period of about two and a half hours, Birmingham admitted killing Ms. Spofford.

Birmingham subsequently filed a motion to suppress the statements he made both at his house and at the police station. The suppression justice granted that motion as to Birmingham's at-home statements, prior to which no *Miranda* warnings had been given, but he refused to suppress the post-*Miranda* statements Birmingham made at the station.

## I. *Admissibility of Police Station Statements*

### A. *Voluntariness*

 The determinative questions in Birmingham's challenge to the suppression justice's refusal to suppress his police station statements are whether the suppression justice found that those statements were voluntary and whether that factual finding was clearly erroneous. *See State v. Pinkham*, 510 A.2d 520, 522 (Me.1986). Review of the transcript of the suppression hearing reveals that although the suppression justice did not explicitly find that Birmingham's police station confession was voluntary, that finding " 'appear[s] from the record with unmistakable clarity.' " *State v. Smith*, 415 A.2d 553, 558 (Me.1980) (quoting *Sims v. Georgia*, 385 U.S. 538, 544, 87 S.Ct. 639, 643, 17 L.Ed.2d 593 (1967)). *See Mincey v. Arizona*, 437 U.S. 385, 397 n. 12, 98 S.Ct. 2408, 2416 n. 12, 57 L.Ed.2d 290 (1978) (finding of voluntariness appeared from record with unmistakable clarity where immediately prior to ruling of admissibility parties had argued issue of voluntariness of confession).

 The record fully supports the suppression justice's implicit finding that Birmingham's statements at the police station were voluntary. At the station the police did not subject Birmingham to threats, coercion, or trickery of any kind. Indeed, Birmingham testified at trial that the interrogating officers told him that he could go home whenever he wished. At the outset they carefully read Birmingham his *Miranda* rights. Birmingham demonstrated

that he understood their significance and then stated that he wished to answer questions. The officers testified that Birmingham's answers were responsive. Although Birmingham was acquainted with one of the interrogating officers, that officer "did not use his acquaintanceship with defendant to trick a confession out of defendant." *State v. Pinkham*, 510 A.2d at 523. Rather, that officer told Birmingham that he was working on the case and properly urged Birmingham to tell the truth. We can find no error, least of all clear error, in the suppression justice's implicit conclusion that Birmingham's police station statements "result[ed] from the free choice of a rational mind," they were "not a product of coercive police conduct," and "under all of the circumstances [their] admission would be fundamentally fair." *State v. Mikulewicz*, 462 A.2d 497, 501 (Me.1983).

### B. *Sufficiency of Miranda Warnings*

 In arguing that the suppression justice erred in refusing to suppress his police station confession, Birmingham points to the failure of the police to give him renewed *Miranda* warnings after breaks in the questioning. Of course, "a confession is not necessarily invalid because the *Miranda* warning is not repeated in full each time the interrogation process is resumed after an interruption." *State v. Myers*, 345 A.2d 500, 502 (Me.1975) (quoting *Miller v. United States*, 396 F.2d 492, 496 (8th Cir.1968), *cert. denied*, 393 U.S. 1031, 89 S.Ct. 643, 21 L.Ed.2d 574 (1969)). Whether "the carry-over effect" (*State v. Ruybal*, 398 A.2d 407, 412 (Me.1979)) of the *Miranda* warning Birmingham received at the beginning of the questioning obviated any subsequent need for renewed *Miranda* warnings is governed by the five-part test set forth in *State v. Myers*, 345 A.2d at 502 (quoting *Commonwealth v. Wideman*, 460 Pa. 699, 707, 334 A.2d 594, 598 (1975)):

(1) the time lapse between the last *Miranda* warnings and the accused's statements;

(2) interruptions in the continuity of the interrogation;

(3) whether there was a change of location between the place where the last *Miranda* warnings were given and the place where the accused's statement was made;

(4) whether the same officer who gave the warnings also conducted the interrogation resulting in the accused's statement; and

(5) whether the statement elicited during the complained of interrogation differed significantly from other statements which had been preceded by *Miranda* warnings.

■ Analysis of those factors compels the conclusion that Birmingham voluntarily confessed at the police station with "full knowledge of his legal rights [and having] knowingly and intentionally relinquish[ed] them." *State v. Myers*, 345 A.2d at 502 (quoting *Miller v. United States*, 396 F.2d at 496). (1) At most a total of two and one half hours elapsed between the *Miranda* warnings and Birmingham's confession. *Cf. State v. Ruybal*, 398 A.2d at 413 (renewed *Miranda* unnecessary where defendant made first inculpatory statement "only four hours" after general *Miranda* warnings and 90 minutes after *Miranda* warnings given before polygraph test). (2) Only three brief interruptions occurred in the questioning. (3) All questioning took place in the same room where Birmingham received the *Miranda* warnings. (4) The same officer who gave the *Miranda* warnings participated centrally in the interrogation that resulted in Birmingham's confession. (5) Although Birmingham's confession did of course differ significantly from his initial denials, that confession can only be viewed as the inevitable result of a properly conducted interrogation.

## II. *Sufficiency of the Evidence*

■ The trial justice's finding that Birmingham acted knowingly and intentionally in killing Ms. Spofford was thoroughly supported by the evidence introduced at trial before him sitting without a jury. Having had the unique benefit of hearing and observing the witnesses at first hand, the justice found incredible Birmingham's testimony that on the night of the murder he had worn his buck knife, which he had never before worn, for the purpose as he claimed at trial of defending himself in the event that he had to walk home after visiting his hospitalized mother. The trial justice instead concluded that although Ms. Spofford had never agreed to a suicide pact, Birmingham took the knife in order to fulfill his earlier statement to Sherri that they "may as well kill [themselves]." Birmingham's locking of the car after positioning Ms. Spofford's body out of sight between the seats, his calculated attempt after washing his hands to dispose of the buck knife without smearing blood onto his own clothing, and his admission to the police of premeditation—"I was gonna take her life and I was gonna kill myself"—all fully supported the justice's finding that Birmingham acted knowingly and intentionally. Viewing the evidence in the light most favorable to the State, the trier of fact could rationally find proof beyond a reasonable doubt of every element of the crime of murder. *See State v. Barry*, 495 A.2d 825, 826 (Me.1985).

The entry is:

Judgment affirmed.

All concurring.