**STATE of Maine**

v.

**John MICHAUD.**

Supreme Judicial Court of Maine.

Argued Jan. 17, 1991.

Decided May 2, 1991.

David W. Crook, Dist. Atty. and Alan P. Kelley (orally), Deputy Dist. Atty., Augusta, for the State.

Robert Sandy (orally), Sherman, Sandy & Lee, Waterville, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD and COLLINS, JJ.

CLIFFORD, Justice.

John Michaud appeals from convictions and from the sentences for those convictions imposed by the Superior Court (Kennebec County, *Brody, C.J.*) on two counts of gross sexual misconduct, 17–A M.R.S.A. § 253(1)(B) (1983 & Supp.1990), and one count of terrorizing, 17–A M.R.S.A. § 210 (1983), following a jury-waived trial. We affirm the judgments of conviction. We conclude, however, that the court erred in imposing consecutive maximum sentences on the two counts of gross sexual misconduct, and we modify Michaud's sentences for those offenses.

In the afternoon of May 12, 1987, Michaud approached two ten-year-old girls who were picking flowers along a snowmobile trail in a rural area of Winslow. Threatening the girls that he would kill them if they did not keep quiet, Michaud took the girls into the woods, told them to remove all of their clothing, and engaged in sexual acts with each of them. After instructing the girls to kiss each other and kissing one of the girls himself, Michaud allowed the girls to get dressed and depart.

Following Michaud's convictions on two counts of gross sexual misconduct and one count of terrorizing,[1] the Superior Court conducted a sentencing hearing and imposed the maximum sentence on each count of gross sexual misconduct, 20 years,[2] to be served consecutively, for a total of 40 years. The court also imposed 364 days on the single count of terrorizing, to be served concurrently with the sentence imposed on the first count of gross sexual misconduct.

I.

## APPEAL FROM CONVICTIONS

### Speedy Trial

Michaud contends that the thirty-two month delay between the date he was indicted and the date of the trial resulted in the denial of his right to a speedy trial. *See* U.S. Const. amend. VI; Me. Const. art. I, § 6. A lapse of thirty-two months between indictment and trial raises a presumption that such a delay is unnecessary and warrants the application of a four-factor balancing test to determine whether Michaud was denied his right to a speedy trial. *State v. Carisio*, 552 A.2d 23, 26 (Me.1988); *see State v. McLaughlin*, 567 A.2d 82, 83 (Me.1989) (seventeen and one-half month delay between indictment and trial sufficient to trigger plenary analysis to determine if defendant was denied right to a speedy trial). A per se violation of Michaud's right to a speedy trial is not established, however, merely because a long period of time elapsed between indictment and trial. *See State v. Beauchene*, 541 A.2d 914, 918–19 (Me.1988) (in context of other factors, eight and two-thirds year delay between indictment and trial did not constitute a denial of defendant's right to a speedy trial).

Considering the length of the delay between indictment and trial, the reasons for the delay, Michaud's efforts to assert his right to a speedy trial, and any prejudice caused to Michaud by the delay, there was no denial of Michaud's constitutional right to a speedy trial. *See McLaughlin*, 567 A.2d at 83. The only delay directly attributable to the State was a continuance of approximately one month requested by the State and not objected to by Michaud. The remainder of the delay was caused in large part by a two-step psychological examina-

1. Michaud also was indicted on two counts of kidnapping, of which he was acquitted, and two counts of unlawful sexual contact, which the court dismissed.

2. The maximum sentence for a single count of gross sexual misconduct (now defined as gross sexual assault, *see* P.L.1989, ch. 401, § A(4))

upon a person under the age of fourteen, a Class A crime, has since been lengthened to 40 years. 17–A M.R.S.A. §§ 253(1)(B) & (4), 1252(2)(A) (Supp.1990); P.L.1987, ch. 808 (eff. July 1, 1989). *See State v. Lewis*, 590 A.2d 149, 151 (Me.1991).

tion process [3] and four competency hearings conducted to determine whether Michaud was competent to stand trial, and the withdrawal of several different court-appointed attorneys because of Michaud's unwillingness to cooperate with them. *See id.* (court, in concluding no denial of defendant's right to a speedy trial, found significant that delay in proceeding to trial was caused by withdrawal of two court-appointed attorneys because defendant refused to communicate with them). Michaud did not formally assert his right to a speedy trial until three months before he went to trial. Finally, Michaud has failed to demonstrate that his defense was impaired by the delay or that he was otherwise prejudiced. *See id.*

### Confession

■ Michaud asserts that the Superior Court erred in denying his motion to suppress statements that he made under interrogation following his arrest. The court found by a preponderance of the evidence that Michaud had waived his *Miranda* rights knowingly, understandingly and voluntarily, and the court further found beyond a reasonable doubt that Michaud's statements were voluntary. *See State v. Knights,* 482 A.2d 436, 440 (Me.1984). Contrary to Michaud's contentions, there was no clear error in the court's factual findings. *See State v. Birmingham,* 527 A.2d 759, 761 (Me.1987).

Michaud challenges the adequacy of his waiver of his *Miranda* rights on the ground that a Winslow detective read him those rights but the District Attorney conducted the bulk of the interrogation. It is undisputed, however, that the District Attorney was present at the time Michaud was informed of his *Miranda* rights, and

that the District Attorney discussed those rights with him at the commencement of the questioning. Moreover, Michaud testified at the suppression hearing and gave no indication that he did not understand either that the District Attorney was a law enforcement officer or that his *Miranda* waiver applied to any statements he made in response to questions posed by the District Attorney.

■ Michaud also contends that his statements were not voluntary. "A confession is voluntary if it results from the free choice of a rational mind, if it is not a product of coercive police conduct, and if under all of the circumstances its admission would be fundamentally fair." *State v. Mikulewicz,* 462 A.2d 497, 501 (Me.1983). The District Attorney's exhortation, "I have you cold turkey, why did you do it?" does not, by itself, render Michaud's confession involuntary. *See State v. Theriault,* 425 A.2d 986, 990 (Me.1981). The entire interrogation lasted about fifteen minutes. Both the District Attorney and the Winslow police officer present at the interrogation testified that upon waiving his *Miranda* rights, Michaud seemed relieved and willing to talk. Michaud's claim of involuntariness is without merit.[4]

## II.

### APPEAL OF SENTENCE

■ Michaud contends that his sentences are excessive, *see* 15 M.R.S.A. § 2154(1), and that it was error for the trial court to impose consecutive maximum sentences for the two convictions of gross sexual misconduct. Pursuant to 15 M.R.S.A. §§ 2151 and 2152 (Supp.1990) and M.R.Crim.P. 40, we granted leave to him to appeal those sentences.[5] In contesting the

---

3. Michaud had entered a plea of not guilty by reason of insanity. 17-A M.R.S.A. § 39 (Supp. 1990). The plea was later withdrawn.

4. Michaud also challenges his convictions on the ground that the identification of him by the victims was suggestive and unreliable. We find no clear error in the court's finding that the photographic lineup identification procedures were not unduly suggestive, or in the court's finding by clear and convincing evidence that

the identification was reliable. *See State v. Philbrick,* 551 A.2d 847, 849–50 (Me.1988).

5. Our objectives in reviewing sentences imposed following convictions for criminal conduct are:

    **1. Sentence correction.** To correct a sentence which is excessive in length, having regard to the nature of the offense, the character of the offender and the protection of the public interest;

length of the sentences, Michaud is challenging their propriety. 15 M.R.S.A. § 2155(1).[6] In considering the propriety of the sentences, we review both the term of years imposed on each sentence, and the appropriateness of making those sentences consecutive. The seriousness of the offenses is central to that review. The nature and seriousness of the defendant's conduct is determinative of the maximum sentence that may be imposed. *State v. Hallowell*, 577 A.2d 778, 781 (Me.1990) (maximum sentence that may be given measured by nature of offense rather than by circumstances of offender). In imposing consecutive sentences on Michaud, the trial court relied on what it considered to be the seriousness of Michaud's criminal conduct. 17–A M.R.S.A. § 1256(2)(D) (1983).

### Maximum Sentences

■ Conduct that falls within the same statutory definition of a crime may be committed in a number of different ways with varying degrees of seriousness. *Hallo-*

**2. Promote respect for law.** To promote respect for law by correcting abuses of the sentencing power and by increasing the fairness of the sentencing process;
**3. Rehabilitation.** To facilitate the possible rehabilitation of an offender by reducing manifest and unwarranted inequalities among the sentences of comparable offenders; and
**4. Sentencing criteria.** To promote the development and application of criteria for sentencing which are both rational and just.
15 M.R.S.A. § 2154 (Supp.1990).

6. In reviewing a criminal sentence, the Supreme Judicial Court is authorized to consider:
(1) **Propriety of Sentence** The propriety of the sentence having regard to the nature of the offense, the character of the offender and the protection of the public interest[.]
15 M.R.S.A. § 2155(1) (Supp.1990).

7. 17–A M.R.S.A. § 1151(8) allows the sentencing court to consider the age of the victims in determining the gravity of the offense.

8. Michaud kissed the vagina of one of the victims; made one of the victims kiss the other victim on the lips; kissed the first victim on the lips; and inserted a device into the second victim's vagina.

9. Michaud described his crimes as acts of "sexual terrorism" that he performed to draw attention to his personal problems.

*well,* 577 A.2d at 781; *see State v. St. Pierre,* 584 A.2d 618, 621–22 (Me.1990). The criminal offense in this case is gross sexual misconduct involving child victims. 17–A M.R.S.A. § 253(1)(B). Gross sexual misconduct, especially involving child victims, is a serious and repugnant crime. Before imposing a maximum sentence in a case such as this, however, the trial court must compare the conduct of Michaud on a scale of seriousness against all the possible means of committing gross sexual misconduct, and conclude that it ranks at or near the top of that scale. *See Hallowell,* 577 A.2d at 781. Michaud took two young girls[7] to an isolated setting, ordered them to remove their clothing, and subjected them to sexual acts.[8] Although there is no question that Michaud's conduct was despicable,[9] gross sexual misconduct could be committed in much more aggravating and heinous ways. Michaud did not expose his genitals or make contact between his genitals and the mouth, anus or genitals of either victim. *See* 17–A M.R.S.A. § 251(1)(C) (Supp.1990).[10] Nor did Michaud

10. The definition of the gross sexual misconduct crime of which Michaud was convicted is as follows:
A person is guilty of gross sexual misconduct
1. If he engages in a sexual act with another person ... and
. . . .
B. The other person, not his spouse, has not in fact attained his 14th birthday.
17–A M.R.S.A. § 253(1)(B) (1983), amended by P.L.1985, ch. 247.
A "sexual act" is defined as:
(1) Any act between 2 persons involving direct physical contact between the genitals of one and the mouth or anus of the other, or direct physical contact between the genitals of one and the genitals of the other.
(2) Any act between a person and an animal being used by another person which act involves direct physical contact between the genitals of one and the mouth or anus of the other, or direct physical contact between the genitals of one and the genitals of the other; or
(3) Any act involving direct physical contact between the genitals or anus of one and an instrument or device manipulated by another person when that act is done for the purpose of arousing or gratifying sexual desire or for the purpose of causing bodily injury or offensive physical contact.
17–A M.R.S.A. § 251(1)(C).

exert violent physical force upon the victims. The entire incident, between the time Michaud abducted the victims and the time he allowed them to leave, lasted about twenty minutes. This gross sexual misconduct, abhorrent as it was, cannot be said to have been committed in the most heinous way that gross sexual misconduct may be committed.[11] Therefore, under the principles enunciated in *Hallowell,* the imposition of the maximum sentences was inappropriate.

### Consecutive Sentences

Because in imposing consecutive sentences the trial court relied upon the seriousness of Michaud's conduct, 17–A M.R.S.A. § 1256(2)(D),[12] that is the focus of our review of the propriety of the consecutive sentences. When a defendant is subject to multiple sentences of imprisonment, there is a statutory presumption that a sentencing court shall impose the sentences concurrently. 17–A M.R.S.A. § 1256(2); *see State v. Walsh,* 558 A.2d 1184, 1188 (Me.1989). Consecutive sentences may be imposed pursuant to section 1256(2)(D) only when the criminal offense is "unusually serious." *Walsh,* 558 A.2d at 1188. The crime of gross sexual misconduct is repugnant and constitutes a serious breach of the criminal law. It may be committed, however, with violent physical force and in many other more heinous ways than it was in this case. *See supra* discussion pp. 542–543; *Hallowell,* 577 A.2d at 781. Because Michaud's commission of these gross sexual misconduct offenses was not so "unusually serious" *for that crime* to justify consecutive sentences, they were improperly imposed.

### Substitute Sentences

Having determined that the sentences in this case are excessive it is our responsibility to substitute an appropriate sentence pursuant to 15 M.R.S.A. § 2156(1)(A).[13] *See St. Pierre,* 584 A.2d at 622. In doing so we are guided by the purposes of sentencing set out in 17–A M.R.S.A. § 1151 (1983 & Supp.1990) [14] and

---

11. Gross sexual misconduct also may be committed, for example, by sexual intercourse, anal intercourse, fellatio, or forcing a person to have sexual contact with an animal. *See supra* note 10.

12. 17–A M.R.S.A. § 1256(2) (1983 & Supp.1990) provides:

> 2. In all other cases, the court shall state in the sentence of imprisonment whether a sentence shall be served concurrently with or consecutively to any other sentence previously imposed or to another sentence imposed on the same date. The sentences shall be concurrent unless, in considering the following factors, the court decides to impose sentences consecutively:
> A. That the convictions are for offenses based on different conduct or arising from different criminal episodes;
> B. That the defendant was under a previously imposed suspended or unsuspended sentence and was on probation, under incarceration or on a release program at the time the person committed a subsequent offense;
> C. That the defendant had been released on bail when that person committed a subsequent offense, either pending trial of a previously committed offense or pending the appeal of previous conviction; or
> D. That the seriousness of the criminal conduct involved in either a single criminal episode or in multiple criminal episodes or

the seriousness of the criminal record of the convicted person, or both, require a sentence of imprisonment in excess of the maximum available for the most serious offense.

Although we review a decision to impose consecutive sentences for an abuse of discretion, *State v. Winchenbach,* 501 A.2d 1282, 1286 (Me. 1985), the discretion can be exercised only if one or more of the factors listed in section 1256(2) is present. The court's determination as to the presence of those factors is reviewed for clear error.

13. 15 M.R.S.A. § 2156(1)(A) provides as follows:

> 1. **Substitution of sentence or remand.** If the Supreme Judicial Court determines that relief should be granted, it may;
> A. Substitute for the sentence under review any other disposition that was open to the sentencing court, provided however, that the sentence substituted shall not be more severe than the sentence appealed[.]

14. 17–A M.R.S.A. § 1151 provides as follows:

> The general purposes of the provisions of this part are:
> 1. To prevent crime through the deterrent effect of sentences, the rehabilitation of convicted persons, and the restraint of convicted persons when required in the interest of public safety;
> 2. To encourage restitution in all cases in which the victim can be compensated and

are aware of the limits on sentences in section 1252. *State v. Lewis*, 590 A.2d 149, 150 (Me.1991). Although the gross sexual misconduct offenses committed here do not rank in the upper quadrant of seriousness as compared to other more heinous and violent ways that the crime may be committed, the gravity of the crimes nevertheless warrants imposition of a substantial sentence. *See* 17-A M.R.S.A. § 1151(8). We conclude that sentences of fifteen years for each conviction to be served concurrently are appropriate.[15]

After determining the sentences appropriate to the severity of the offense, we must consider the possible existence of mitigating factors that favor the suspension or partial suspension of the sentences, and the likelihood of successful rehabilitation. *State v. Constantine*, 588 A.2d 294, 297 (Me.1991). The circumstances of the offender and the protection of the public must be weighed to determine whether and to what extent the sentences otherwise called for by virtue of the nature and seriousness of the crime should be reduced. *Hallowell*, 577 A.2d at 781-82. *see* 17-A M.R.S.A. § 1151.

There are aggravating circumstances present in this case. Michaud has expressed no remorse. He has two prior convictions for criminal assault and one for criminal threatening, all involving physical violence. Michaud has a mental illness that has been treated successfully while he is hospitalized, but Michaud has not submitted to follow-up treatment and has not taken his medication when released. A psychiatric evaluation performed in connection with the presentence report was inconclusive as to whether psychiatric treatment could serve an effective deterrent purpose. There are also, however, countervailing mitigating circumstances that we must consider in deciding whether to suspend a portion of the sentence and place Michaud on probation. *See* 17-A M.R.S.A. § 1151(3), (5), (6) & (7). Michaud has no felony criminal record and no prior conviction for sex crimes. The prior offenses for which he was convicted arose out of a single incident in 1984. Michaud, who was raised in a dysfunctional family,[16] has a long history of mental illness and emotional problems. His mental illness is treatable and when he is hospitalized and treated with medication, he becomes compliant and responds well to external controls. Given Michaud's psychological problems, it is in the interest of the public's protection, and in his best interests, that Michaud be subjected to a lengthy probationary period upon his release from prison, during which he can receive treatment appropriate to his condition.

Therefore, it is appropriate that all but twelve years of each of Michaud's concurrent fifteen-year sentences be suspended, and that, following his release from prison, he be placed on probation for a period of six years. In addition to the standard conditions of probation,[17] including the prohibi-

---

other purposes of sentencing can be appropriately served.

**3.** To minimize correctional experiences which serve to promote further criminality;

**4.** To give fair warning of the nature of the sentences that may be imposed on the conviction of a crime;

**5.** To eliminate inequalities in sentences that are unrelated to legitimate criminological goals;

**6.** To encourage differentiation among offenders with a view to a just individualization of sentences;

**7.** To promote the development of correctional programs which elicit the cooperation of convicted persons; and

**8.** To permit sentences which do not diminish the gravity of offenses, with reference to the factor, among others, of the age of the victim.

**15.** 17-A M.R.S.A. § 1256(2)(A) provides that consecutive sentences may be imposed when the offenses are based on different conduct or arise from different criminal episodes. Because in this case Michaud's acts were so much a part of a single criminal episode, we conclude it to be inappropriate to make the sentences consecutive.

**16.** Michaud's mother was hospitalized for mental illness forty-three times.

**17.** The conditions of probation are as follows:
  1. To refrain from all criminal conduct.
  2. To report to the probation officer as the probation officer may direct.
  3. To answer all reasonable inquiries by the probation officer and permit the probation officer to visit at reasonable times in the home or elsewhere.

tion on Michaud's use of alcohol and drugs, Michaud shall be required to undergo psychiatric treatment and participate in psychiatric and sex offender programs as determined by and to the satisfaction of the Division of Probation and Parole. He must follow the regimen of therapy, including medication, prescribed as part of his treatment program. In addition, Michaud is to comply with and submit to any testing, including random drug testing, to insure that he is following said regimen and refraining from the use of unlawful drugs and alcohol. Finally, Michaud is to have no contact with the victims or their families.[18]

The entry is:

Judgments of conviction affirmed. Sentences for gross sexual misconduct amended by substituting therefor sentences of fifteen years to be served concurrently in the custody of the Department of Corrections, with all but twelve years of those sentences to be suspended, and defendant to be committed to the custody and control of the Division of Probation and Parole for a term of six years upon conditions specified in the opinion herein. Said probation to commence upon release from incarceration.

All concurring.

4. To notify the probation officer before changing address or employment.

5. To remain within the jurisdiction of this state unless written permission is given by the probation officer to leave the state temporarily.

6. To devote himself to an approved employment/educational program.

7. To refrain from the possession and use of any unlawful drugs.

8. To refrain from possession or use of intoxicating liquor.

9. To refrain from the possession of firearms and dangerous weapons.

10. Upon being arrested, detained or questioned by a law enforcement officer, to identify himself as a probationer to the officer and notify the probation officer of the contact within 24 hours.

11. To agree to waive extradition to the State of Maine from any state of the United States, the District of Columbia, or any other place, to answer any charge of violating the terms of probation.

12. To pay through the Division of Probation and Parole a supervision fee of $10 per month for the term of probation.
*See* 17-A M.R.S.A. § 1204 (1983 & Supp.1990).

18. Michaud must be given a written statement setting forth the conditions of probation by a Superior Court Justice and an opportunity to comment on them. This can take place at any Superior Court location, including a location proximate to his place of incarceration. *See* 17-A M.R.S.A. § 1204(3) (1983).