1999 ME 91

### STATE of Maine

.v.

### Ronald DRAKE and Walter Hartford.

Supreme Judicial Court of Maine.

Submitted on Briefs May 24, 1999.

Decided June 22, 1999.

---

Andrew Ketterer, Attorney General, Donald W. Macomber, Asst. Atty. Gen., Lisa Pelkey Marchese, Asst. Atty. Gen., Augusta, for State.

David J. Van Dyke, Berman & Simmons, P.A., Lewiston, for Ronald Drake.

Justin W. Leary, Sharon, Leary & DeTroy, Auburn, for Walter Hartford.

Before WATHEN, C.J., and
CLIFFORD, RUDMAN, DANA,
SAUFLEY, and CALKINS, JJ.

WATHEN, C.J.

[¶ 1] Defendants Ronald Drake and Walter Hartford appeal from judgments entered in the Superior Court (Androscoggin County, *Delahanty, J.*) following jury verdicts finding them guilty of murder (17–A M.R.S.A. § 201(1)(A) & (B) (1983 & Supp. 1998)) and robbery (Class A) (17–A M.R.S.A. § 651(1)(D) (1983)). Defendant Drake argues that the court erred in denying his request to suppress the videotape of his interview, and, in any event, erred in admitting portions of the videotape without requiring the jury to view the entire five and one-half hour recording. Defendant Hartford argues that the court erred in admitting the redacted testimony of a witness because references to Hartford, made by co-defendant Drake to the witness, were not effectively deleted. We affirm the judgments.

[¶ 2] The evidence presented at trial may be summarized as follows: Defendant Hartford was introduced to the victim Bradley Burnell on the night of February 17, 1997, through mutual acquaintances at a social club in Lewiston. The party moved across the street to a second bar and Burnell pulled some money out of his pocket in front of Hartford and bought everyone a round of drinks. Burnell and Hartford left the bar together and took a cab to Drake's apartment to try to sell anti-depressant and tranquilizer pills that had been prescribed for Burnell when he signed himself out of a detoxification unit at a local hospital. Hartford and Drake spoke privately at the apartment and Hartford suggested that they "roll" Burnell. Drake informed Burnell he did not have the money at the apartment, so Drake, Hartford, and Burnell left to go to a house on Howe Street so that Drake could get some money to buy the pills. On the way over, Drake and Hartford attacked Burnell. During the fight Burnell fell down an embankment. Both Hartford and Drake followed him down the embankment and continued to hit and kick him until he stopped moving. They rummaged through Burnell's pockets and Drake found the pills. They left Burnell lying at the bottom of the embankment in "pretty bad shape," with Hartford thinking he might be dead. Drake and Hartford returned to Drake's place. Afterward, Drake's girlfriend found three pill bottles with Burnell's name on them on the kitchen table. Burnell's body was found eleven days later, the cause of death being a "blunt head and neck injury with aspiration of blood."

[¶ 3] Following the discovery of the body, both defendants were interviewed by the police, arrested, and subsequently indicted on charges of murder and robbery. Drake moved to suppress the recorded statements made by him during the police interview. Both defendants also moved for separate trials. The court denied the suppression motion and ordered one trial with two separate juries. Both defendants were found guilty and both appeal.

## I. Ronald Drake

[¶ 4] Defendant Drake first contends that the court erred in denying his motion to suppress the videotape of his interview. He argues that the police erred in failing to give him his Miranda rights a second time during the five and one-half hour interview. Applying the five objective indicia adopted in *State v. Myers*, 345 A.2d 500, 502 (Me.1975) to the facts of this case, we find no error. Approximately five and one-half hours elapsed between the Miranda warning given as the interrogation commenced and Drake's incriminating statements. The location stayed the same. The officers changed within the first hour when Detective Parlin entered the room and, with the exception of Detective Urquhart's taking a statement at 9:20 p.m., Detective Parlin stayed in the room thereafter, even though other officers and individuals entered the room to confront Drake with information. Even when these other individuals were in the room, the interview continued. Contrary to Drake's argument that the incriminating statements eventually elicited at the conclusion of the interview differed decidedly from those made during the rest of the interview, they were the result of a properly conducted interrogation. *See State v. Birmingham*, 527 A.2d 759, 762 (Me.1987).

[¶ 5] Drake argues next that the court erred in refusing to allow the jury to view the entire videotape of his interview. We review a trial court's determination to exclude evidence pursuant to M.R. Evid. 403 [1] for abuse of discretion. *See State v. Clough*, 391 A.2d 361, 362 (Me.1978). "A

---

1. Rule 403 provides that:
   Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.
   M.R. Evid. 403.

trial justice has broad discretion in determining whether the probative value of evidence is outweighed by the danger of confusing issues or by sheer waste of time." *Id.* The State offered, and the court admitted, the last 40–50 minutes of the videotape of the interview that included the incriminating statements. The court found little of probative value existed in the complete interview and concluded that it would be a waste of time to require the jury to view the entire five and one-half hour videotape. In order to provide context and balance, the court gave Drake the opportunity to introduce selected portions of the interview totalling no more than one hour. Such a presentation, together with a statement, also offered to Drake by the court, that the interview was approximately five and one-half hours in length, would have sufficiently provided the jury with the context of Drake's defense that he stood by his denials during the interview until he was broken down at the end. Drake, however, chose not to introduce any portion of the tape. The court did not abuse its discretion in excluding the evidence offered.

## II. Walter Hartford

[¶ 6] A state's witness was allowed to testify to statements related to him by Drake as follows: "this other guy brought the victim to his house with the intent of robbing him of money and some prescription pills, Valium"; "This other guy asked Ron if he'd like to rob him of his money and pills and Drake agreed"; "the two men demanded the money and the pills from Bradley Burnell.... From that point on the two men started pushing him"; and "both men started beating him."

[¶ 7] Defendant Hartford argues that although his name was not mentioned in the testimony of the witness, the redaction was insufficient under M.R. Evid. 105 and was prejudicial to him. Rule 105 provides in pertinent part that:

> When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court upon request shall restrict the evidence to a proper scope and instruct the jury accordingly. *In a criminal case tried to a jury evidence inadmissible as to one defendant shall not be admitted as to other defendants unless all references to the defendant as to whom it is inadmissible have been effectively deleted.*

M.R. Evid. 105 (emphasis added).

[¶ 8] The language at issue in Rule 105 was adopted in 1976 to incorporate the holdings of *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) and *State v. Wing,* 294 A.2d 418 (Me.1972). *See State v. Boucher,* 1998 ME 209, ¶ 12, 718 A.2d 1092, 1095; M.R. Evid. 105 advisers' notes, Field & Murray, *Maine Evidence* 40 (4th ed.1997). In *Bruton,* the Supreme Court held that the admission into evidence of a nontestifying co-defendant's out-of-court confession that the co-defendant and Bruton together had committed a robbery violated Bruton's Sixth Amendment right to confront the witness against him, even though the trial court instructed the jury to disregard the testimony in determining Bruton's guilt or innocence. *See State v. Boucher,* 1998 ME 209, ¶ 11, 718 A.2d 1092, 1095 (citing *Bruton v. United States,* 391 U.S. 123, 135–37, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968)).

[¶ 9] In this case, however, Drake testified. We have stated, both before and after the rules of evidence were promulgated in 1976, that "where the confessing co-defendant is available at trial for cross-examination, his co-defendant's confrontation is fully satisfied." *State v. Williams,* 395 A.2d 1158, 1167 (Me.1978) (citing *State v. Berube,* 297 A.2d 884, 888 (Me.1972); *State v. Wing,* 294 A.2d 418, 423 (Me. 1972)). Drake elected to become a witness in his own defense and, although he denied the conversation with the State's witness, he testified to the substance of the statements that he purportedly made to the witness that incriminated Hartford. By testifying, Drake submitted to cross-exam-

ination by Hartford's attorney. Therefore, Hartford's right to confrontation was fully satisfied.

The entry is:

Judgments affirmed.