STATE OF MAINE
HANCOCK, ss

SUPERIOR COURT
DOCKET NO. AP-07-16

JPP, LLC
       Plaintiffs/Appellants

DONALD L. GARBRECHT
LAW LIBRARY

AUG 12 2008

V.

TOWN OF GOULDSBORO


80B APPEAL
DECISION


This is an appeal under Rule 80B M.R.Civ.P. from the decision of the Gouldsboro Planning Board denying an application for approval of a Major Subdivision under the Gouldsboro Ordinance. The Planning Board denied the application and the applicant commenced this Rule 80B action in a timely fashion seeking review of that decision.

## Review Standard

The standard of review to be applied by the Superior Court is to review the decision of the Planning Board for errors of law, abuse of discretion or findings not supported by substantial evidence in the record. *Adelman v Town of Baldwin*, 1999 ME 91, 750 A.2d 577, 582; *Forbes v. Southwest Harbor*, 2001 ME 9, 763 A.2d 1183, 1186; *Bodack v. Town of Ogunquit*, 909 A.2d 620, 623 (Me. 2006. Substantial evidence in the record is said to be that evidence that a reasonable mind would accept as sufficient to support a conclusion. The Superior Court is not to make independent findings of fact or substitute its judgment for that of the Planning Board. *Brown v. Town of Kennebunkport* 565 A.2d 324 (Me. 1989). To the extent that an ordinance requires interpretation, that is a question of law subject to *de novo* review. *Gensheimer v. Town of Phippsburg*, 2005 ME 22, 868 A.2d 161, 166.

## Background

Applicant sought approval by the Gouldsboro Planning Board of a 14 unit Major Subdivision. Among other components, the subdivision contemplated construction of a road in excess of 11,000 feet that would connect with a private road known as the South Road. Following consideration of the applicant's submissions at several

Planning Board meetings between April and August of 2007 (Exhibits 9-16) [Exhibit references are to the Administrative Record filed with the Court] and a public hearing on August 14, 2007, the Planning Board denied approval of the subdivision at its meeting of August 21, 2007. It was noted in the minutes of August 21, 2007, that "(t)he Board spent the remainder of the meeting filling in the Finding-of-Fact form, parts of which remain conditional upon DEP's pending evaluation of the SD's phosphorous loading documents." At the same meeting the Board denied the request to waive the Ordinance requirements dealing with the length of the road (Administrative Record, Exhibit 16, hereinafter 'Exhibit').

The Planning Board used a "subdivision findings-of-fact checklist & comments" form to provide its reasoning. As reflected on the checklist dated September 4, 2007, it opined that the subdivision proposed "#9 does not conform with all existing ordinances and plans. Does not meet road length per Art. 10 Sec. C #3 Subdivision Ord. 1000 Ft. limit requested 11,000 feet." (See Exhibit 22) It also opined that (#14) Freshwater wetlands had not been identified on any maps submitted as part of the application, referencing #16 (See Exhibit #22) on the checklist and that (#16) the plan did not provide adequate

3

storm water management (See Exhibit 22). Finally the Planning Board determined that (#18) the long term cumulative effects of the subdivision would unreasonably increase a great pond's phosphorous concentration during the construction phase and life of the subdivision, referencing a 9/4/07 memo from DEP (See Exhibit 21 and 22). For those cumulative reasons the Planning Board did not approve the proposed subdivision.

## Issues

The parties have elected to use the Findings of Fact Checklist (Record Exhibit 22) as a reference around which to discuss the issues and the Court will follow that lead.


1. Conformity with Town Ordinance (#9 on Ex. 22)

Plaintiff Appellant takes issue with the Town's conclusion that the subdivision did not "meet road length per Art 10 Sec. #3 Subdivision Ord. 1000 ft. limit requested 11,000 ft." (See Exhibit 16 and 22) That is, the Ordinance limited construction to roads of 1,000 feet and the Planning Board found that the proposed road violated the Ordinance (See Exhibit 16 and Exhibit 23 at 'a' on pg 44 of the Ordinance and 'h' on pg. 45 of the Ordinance).

In interpreting the Ordinance, much like one would interpret a statute, the Court looks to the plain meaning giving effect to the legislative intent. *First Union National Bank v. Curtis*, 2005 ME 108, 882 A.2d 796

At the outset, it is clear to this Court that the Ordinance suffers from a mis-numbering error but not from any ambiguity on the points in question. Clearly Article X [C] of the Ordinance was intended to deal with streets. Just as clearly the numbering erroneously goes from 3 at the bottom of page 40 back to 1 at the top of page 41 (See Exhibit 23 pgs 40 and 41). This Court interprets the Ordinance as 1 at the top of page 41 (Two Lane Roads) was intended to be 4. 2 at the bottom of page 42 (Layout) was intended to be 5. 3 at the bottom of page 43 (Design and Construction Standards) was intended to be 6, etc.

In that context, the 'Design and Construction Standard' [at the bottom of pg. 43 of the Ordinance], sub-section (h) [at pg. 45] applies to the sub divider in terms of dead-end streets shall not exceed 1,000 feet in length. It is a misinterpretation of the Ordinance to suggest that sub-section (h) only applies to streets that enter onto Route 1, as the applicant argues. The Court does not adopt that suggestion by the Plaintiff.

5

The Plaintiff next looks to the language "dead-end street" and argues that absent definition in the Ordinance, that term does not apply to the facts even though the Town's Planning Board has interpreted its own Ordinance in terms of the prohibition against roads over 1,000 feet applying to these facts. Initially the Court will not substitute its interpretation of the language in the Ordinance for the Town's interpretation, absent a strong and clear basis to alter the Town's interpretation of its Ordinance. Here, we are faced with a record that indicates that some but not all lots in the proposed subdivision will have a potential alternate ingress and egress over a private road with which the proposed Rocky Road of the subdivision will join. Since it is an agreed fact that the proposed street (Rocky Road) will be beyond the 1,000 foot limit and since it is an agreed fact that some of the proposed subdivided lots will not be entitled to go across the private road (South Road) with which the Rocky Road is intended to join, the Court would also find and conclude that subsection (h) at pg. 45 of the Ordinance applies. The Court is satisfied with the dictionary definition of 'dead end' as "an end of a street, alley etc. that has no regular exit." Webster's New World Dictionary (1972), Second College Edition. In the context of that definition,

whether it is one lot or thirteen that do not have the right to go across the private road (South Road), the Rocky Road as proposed is a 'dead-end' road to those subdivision lot owners who cannot go across the South Road. Whether there is a physical barrier across the South Road is not relevant. It is the lack of lawful authority to cross the South Road that makes the terminus of the Rocky Road with the South Road a dead-end intersection. The interpretation by the Planning Board that the 11,000 foot road violates the Gouldsboro Ordinance at pg. 44 'a' and pg. 45 'h' is neither an error of law, an abuse of discretion or a finding of fact without substantial evidence on the record. On this ground alone the appeal is DENIED.

Plaintiff further argues that it was an abuse of discretion on the part of the Planning Board not to grant a waiver of the 1000-foot road length limitation with reference to the proposed road anticipated to be in excess of 11,000 feet. Given the discretion allowed to the Planning Board in Article IV of the Ordinance and given the facts, the Court cannot say that the failure to grant the requested waiver of the 1000-foot road length limitation was legally improper judgment on the part of the Planning

7

Board reflecting an abuse of discretion or an error of law. On this ground the appeal is likewise DENIED.

2. Failure to identify fresh water wetlands (#14); Failure to provide adequate storm water management (#16); Failure to show that effects of the subdivision will not unreasonably increase a great pond's phosphorous concentration (#18)

If there is a valid basis to deny the application for subdivision approval, that makes it unnecessary to discuss the other contentions of the applicant. Although the other issues raised by the applicant may be moot, the Court thinks it appropriate to at least address those issues should this matter be further reviewed. Plaintiff argues that its due process or fundamental fairness rights were impermissibly intruded on by the Planning Board identifying these additional grounds for denial on September 4th after having decided the Plaintiff's several requests for waiver of the Ordinance requirements at the Planning Board Meeting of August 21, 2007. A review of the record does not support the facts suggested by the applicant. A review of Exhibit 16 (minutes of 8/21/07 meeting of Planning Board) confirms that at the August 21 meeting the waiver requests of this

applicant were granted in part and denied in part. Clearly representatives of the applicant were present at this meeting. On the same date the Board specifically denied the subdivision application as not meeting the requirements of the Gouldsboro Ordinance. (See Exhibit 16) That dismissal was "conditional upon DEP's pending evaluation." That is, the applicant was on notice as of August 21 that the application was denied AND that there might be additional reasons relating to the phosphorous loading.

Due Process carries with it the obligation that a citizen be given notice and the opportunity to be heard. *Crispin v. Town of Scarborough*, 736 A.2d 241, 247,248 (Me. 1999). In this instance the record supports the conclusion that the applicant/Plaintiff attended multiple Planning Board Meetings, including the meeting of August 21, 2007 (Exhibit 16). It was at that meeting that the decision was made to deny the application. The reasons for that decision were that the application did not meet the requirements of the Gouldsboro Ordinance. Further reasoning was conditional on the DEP's further evaluation as to phosphorous loading. There is no indication that the DEP evaluation dated September 4 (see Exhibit 21) was presented at a public Planning Board Meeting before or at the time it became a basis for the denial of the application (see Exhibit 22).

9

Although due process requirements were met with regard to the exchange of information up to August 21,2007, they were not thereafter met.

If the only basis for the application denial by the Planning Board was for reasons found in the DEP evaluation, the Court would direct that this matter be remanded to the Planning Board to conduct a public meeting consistent with the Applicant's due process rights to notice and to be heard. At that meeting, the applicant would be given the opportunity to respond (orally or with documents) to the DEP evaluation and the Planning Board would then be directed to set forth its reasoning on the findings of fact checklist for granting or denying the application on the basis of the DEP evaluation and opposing information submitted by the applicant. See *Lane Construction Corp. v. Town of Washington et al. and Land Assoc. of Washington et al. v Town of Washington et al.*, 2008 ME 45 ¶ 31,32,34

In light of this Court's decision affirming the denial of the application by the Planning Board based on the Ordinance restriction on roads in excess of 1,000 feet, the appeal is DENIED.

Pursuant to Rule 79, M.R.Civ.P. the Clerk will incorpoate this DECISION and ORDER into the docket.

MAY 08 2008

HANCOCK COUNTY COURTS

Dated:   May 8, 2008

_____
Kevin M. Cuddy, Justice

10